Jason H. Tarricone (SBN 247506)
jason@clsepa.org
Margaret McBride (SBN 294066)
mmcbride@clsepa.org
COMMUNITY LEGAL SERVICES IN EAST PALO ALTO
1861 Bay Road
East Palo Alto, CA 94303
Tel:  (650) 326-6440
Fax:  (866) 688-5204

Linda M. Dardarian (SBN 131001)
ldardarian@gbdhlegal.com
Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
William C. Jhaveri-Weeks (SBN 289984)
wjhaveriweeks@gbdhlegal.com
Megan E. Ryan (SBN 264922)
mryan@gbdhlegal.com
Katharine L. Fisher (SBN 305413)
kfisher@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Tel:  (510) 763-9800
Fax:  (510) 835-1417

(*Additional Counsel for Plaintiffs listed on following page*)
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| JAVANNI MUNGUIA-BROWN, ANGELINA MAGAÑA, NORMA RODRIGUEZ, and DAVID BONFANTI individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>EQUITY RESIDENTIAL, a real estate investment trust, ERP OPERATING LIMITED PARTNERSHIP, a partnership, EQUITY RESIDENTIAL MANAGEMENT, L.L.C., EQR-WOODLAND PARK A LIMITED PARTNERSHIP, and EQR-WOODLAND PARK B LIMITED PARTNERSHIP,<br><br>        Defendants. | Case No.: 4:16-cv-01225-JSW<br><br>**SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES; CLASS ACTION [FED. RULE OF CIV. PROC. 23]**<br><br>(1)  **VIOLATION OF CAL. CIV. CODE § 1671;**<br>(2)  **UNLAWFUL AND UNFAIR BUSINESS PRACTICES (BUS. & PROF. CODE §§ 17200-17208);**<br>(3)  **REASONABLE ATTORNEYS' FEES AND COSTS** |

636299.15

Craig Nicholas (SBN 178444)
craig@nicholaslaw.org
Alex Tomasevic (SBN 245595)
alex@nicholaslaw.org
NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Floor
San Diego, CA 92101
(619) 325-0492
(619) 325-0496

Attorneys for Plaintiffs

636299.15

Javanni Munguia-Brown, Norma Rodriguez, Angelina Magaña, and David Bonfanti ("Plaintiffs"), on behalf of themselves and all others similarly situated (hereinafter "Class Members"), upon information and belief, complain and allege as follows:

## I.   **INTRODUCTION**

1.      Defendants Equity Residential, ERP Operating Limited Partnership, Equity Residential Management L.L.C., EQR-Woodland Park A Limited Partnership, and EQR-Woodland Park B Limited Partnership (hereinafter collectively referred to as "Defendants"), own, lease, and manage residential properties.  In California, Defendants own or manage thousands of individual rental units. Defendants have a uniform late rent fee policy and practice across all of their California residential rental properties.  Defendants' policy and practice is to charge tenants fees of $50 or 5 percent of their monthly rent for the late payment of rent, even if Defendants receive the rent as little as one day late (past the grace period) and incur no damages (other than, potentially, a few cents of lost interest) as a result.  Moreover, Defendants' policy and practice is to charge tenants late fees of $50 or 5 percent of their monthly rent if tenants carry any accrued balance of unpaid late fees or other charges past subsequent monthly grace periods, even when the tenants timely pay the monthly rent itself, and regardless of whether the outstanding balance is minimal.  The late fee is a liquidated damages penalty, allegedly for the breach of tenants' rental contracts, and is void under California Civil Code § 1671(d) because it is excessive and bears no relation to any actual damages incurred by Defendants when rent or other fees are paid late (Defendants' late fee penalties are hereinafter referred to as "Excessive Late Fees.").  Because Defendants' policy and practice of charging Excessive Late Fees violates Civil Code § 1671(d), it is an unlawful business act or practice which causes Plaintiffs and other tenants financial injury, and is prohibited by California's Unfair Competition Law, Business and Professions Code § 17200, *et seq.* (hereinafter referred to as the "UCL"). It is also an unfair business act or practice in violation of the UCL.  Plaintiffs bring this action to challenge Defendants' Excessive Late Fee policy and practice on behalf of themselves and all other similarly situated residents of Defendants' residential rental properties in California.

636299.15

2.      California law establishes a presumption that "the detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon."  Cal. Civ. Code § 3302.  Defendants' Excessive Late Fees represent exorbitant interest rates for tenants' failure to pay the amount of rent or other charges due.  Defendants' late fees exceed any reasonable measure of Defendants' actual damages sustained as a result of their tenants' late rent payments or late payments of outstanding balance amounts.

3.      For example, when Defendants charge a $50 late fee when a tenant has paid a rent of $1,200 two days late, this amounts to an interest rate of 760 percent per annum.  By contrast, a 10 percent annual interest rate in this example would dictate a daily late fee of approximately thirty-three cents.  Similarly, when Defendants charge a $50 late fee when a tenant has paid an outstanding balance of $150 two days late, this amounts to an interest rate of 6083 percent.  The unreasonableness of the late fee penalty is further demonstrated by the fact that Defendants charge these fees whether the rent is one day late or two weeks late and whether the outstanding balance is $150 or $2,500.

4.      As another example, under Defendants' Excessive Late Fee policy and practice, if a tenant has been a few days late in paying rent in full in two different months, and has a $100 or $150 balance consisting of two late fees, Defendants will charge that tenant a new late fee in every month that follows until the full balance of late fees is paid, even if the tenant is paying the full rent itself on time each month.  In other words, when a tenant makes a timely payment of one month's rent but also has a small outstanding balance consisting of prior late fees or other charges, Defendants will allocate the payment to a portion of the balance that includes the outstanding fees, but will then charge a late fee because the full balance has not been paid off.  This policy is set out in Defendants' standard lease, which defines "rent" to include late fees and any other charges outstanding, and provides that a tenant will be charged a late fee if the full amount of outstanding "rent" is not received each month.  This policy and practice results in Defendants charging tenants multiple Excessive Late Fees on minimal balances that do not represent a reasonable measure of Defendants' actual damages.

5.      For a sub-class of tenants, Defendant charges Excessive Late Fees for outstanding minimal balances even though the tenants' leases do not authorize it.  Specifically, when Defendants

636299.15

1   acquired the buildings in which Plaintiffs Munguia-Brown, Rodriguez, and Magaña reside, Defendants

2   stepped into the shoes of the prior lessor, and did not provide them with a new lease.  The prior leases

3   provided for a late fee when rent was overdue, but did not provide for the charging of late fees on top

4   of late fees or other outstanding balances.  Nonetheless, Defendants applied their standard policy and

5   charged such tenants late fees of $50 or five percent of the monthly rent whenever there was an

6   outstanding balance, even if the tenants' monthly rent payment itself was timely.  There was no

7   contractual basis for the fees Defendants charged these tenants, and the tenants in this sub-class did not

8   agree in their leases upon an amount of damage that Defendants would sustain by the tenants' carrying

9   outstanding balances.  This is a separate and independent reason that late fees on outstanding balances

10  (as opposed to late fees for late payment of a month's rent) must be disgorged and returned to the

11  members of this sub-class, with interest.  In the alternative, if a court found that there was some

12  implied contractual basis, the policy still would represent an unlawful liquidated damages penalty

13  under California Civil Code § 1671(d), and an unfair business act or practice, for the same reasons

14  asserted on behalf of the class as a whole.

15      6.      Plaintiffs and Class Members currently reside or, during the four years prior to filing

16  this action, have resided in Defendants' rental properties.  They have paid Excessive Late Fees to

17  Defendants in accordance with Defendants' unlawful and unfair late fee policy.  As a result, Plaintiffs

18  and Class Members have suffered injury in fact.

19      7.      Plaintiffs seek to represent themselves and similarly situated persons who have rented a

20  residential unit in California from Defendants and have been assessed a late fee by Defendants at any

21  time from four years prior to the original filing of this action through the date of class certification.

22  Plaintiffs also seek to represent a sub-class of tenants whose pre-EQR leases, which were assumed by

23  Defendants, do not state an agreement for the charging of late fees on late fees or other outstanding

24  balances other than the monthly rent due.  Pursuant to California Civil Code § 1671(d) and California

25  Business & Professions Code § 17203, Plaintiffs seek restitution of Excessive Late Fees that

26  Defendants have collected.  Plaintiffs also seek a declaratory judgment, pursuant to California Code of

27  Civil Procedure § 1060 and California Business & Professions Code § 17203, that Defendants' late fee

28

636299.15

1   policy and practice is prohibited within the state of California.  Plaintiffs also seek injunctive relief

2   enjoining Defendants' ongoing unlawful and unfair business practices, as alleged herein, pursuant to

3   California Business & Professions Code § 17203.  Defendants' violations of California Civil Code

4   §1671(d) and Business and Professions Code § 17200, *et seq*., are continuing.

## II.   SUBJECT MATTER JURISDICTION AND VENUE

6       8.   Defendants removed this action to this Court on March 11, 2016, under the Class

7   Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  This Court has jurisdiction under CAFA

8   because there are more than one hundred putative class members, the aggregate claims of the putative

9   class members exceed $5 million, exclusive of interest and costs, and at least one of the members of

10  the proposed class is a citizen of a different state than one or more Defendants.

11      9.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial

12  part of the events or omissions giving rise to the claim occurred in this district.  Venue is also proper in

13  this district pursuant to 28 U.S.C. § 1441(a), given that this Court has subject-matter jurisdiction under

14  CAFA.  Venue in this district is also proper because each Defendant "resides" in this district under 28

15  U.S.C. § 1391(b)(1) and (c)(2), in that each Defendant is subject to this Court's personal jurisdiction

16  with respect to this civil action, as set forth in the following section.

## III.   THE PARTIES AND PERSONAL JURISDICTION

18      10.  Defendant EQUITY RESIDENTIAL ("EQR") is a real estate investment trust

19  organized under the laws of the state of Maryland, with its principal executive offices located at Two

20  North Riverside Plaza, Chicago, Illinois.  EQR is the sole general partner of Defendant ERP

21  OPERATING LIMITED PARTNERSHIP ("ERP").  EQR controls ERP and the day-to-day

22  management of ERP.  Through ERP and ERP's subsidiaries, EQR also owns or controls all of the

23  California properties where class members reside and were charged Excessive Late Fees, including

24  properties in this district.  EQR also owns or controls the entities that set the late fee policy in question.

25  Therefore, this Court has personal jurisdiction over EQR in this action.

26      11.  Defendant ERP is an Illinois limited partnership that is registered with the California

27  Secretary of State to do business in the state of California.  ERP was formed to conduct EQR's

28

4

636299.15

residential property business, and holds substantially all of EQR's assets.  ERP owns and operates single-purpose limited liability companies that acquire residential rental properties throughout the state of California.  Through those limited liability companies, ERP owns or controls (or owned or controlled during the class period) thousands of residential rental units throughout the State of California, including Plaintiffs' and Class Members' residences in this district.  Therefore, this Court has personal jurisdiction over ERP in this action.

12.     Defendant EQUITY RESIDENTIAL MANAGEMENT, L.L.C. ("ERM") is a Delaware entity with its principal place of business in Illinois, and is registered with the State of California to do business in this state.  On information and belief, Defendant ERP is the sole and controlling "Member" of ERM, pursuant to ERM's corporate governance documents.  ERM conducts the day-to-day management of Defendants' residential properties in California, including in this district.  ERM manages Defendants' property in which Plaintiff Bonfanti is a tenant, and, during the class period, managed Defendants' properties where Plaintiffs Munguia-Brown, Magaña, and Rodriguez are tenants (until Defendants sold those properties to new owners in approximately February 2016).  On information and belief, ERM implements and enforces Defendants' late fee policy.  Therefore, this Court has personal jurisdiction over ERM in this action.

13.     Defendants EQR-WOODLAND PARK A LIMITED PARTNERSHIP ("Woodland Par- A") and EQR-WOODLAND PARK B LIMITED PARTNERSHIP ("Woodland Park B") are both Delaware entities with their principal places of business in Illinois, and both are registered to do business with the State of California.  Upon information and belief, Defendants Woodland Park A and Woodland Park B were formed for the sole purpose of holding title to the properties where Plaintiffs Munguia-Brown, Magaña, and Rodriguez reside, and held such title until Defendants sold the properties in  approximately February 2016.

14.     Plaintiff Javanni Munguia-Brown was a tenant of Defendants' residential property in East Palo Alto, California until approximately February of 2016 when Defendants sold the property. She was subject to Defendants' late fee policy.  Defendants have assessed Excessive Late Fees against Ms. Munguia-Brown subject to Defendants' policy.

636299.15

15.     Plaintiff Norma Rodriguez was a tenant of Defendants' residential property in East Palo Alto, California until approximately February of 2016 when Defendants sold the property. Defendants have assessed Excessive Late Fees against Ms. Rodriguez subject to Defendants' policy.

16.     Plaintiff Angelina Magaña was a tenant of Defendants' residential property in East Palo Alto, California until approximately February of 2016 when Defendants sold the property. Defendants have assessed Excessive Late Fees against Ms. Magaña subject to Defendants' policy.

17.     Plaintiff David Bonfanti is a current tenant of one of Defendants' residential properties in Los Angeles, California. He is subject to Defendants' late fee policy. Defendants have assessed and will likely continue to assess Excessive Late Fees against Mr. Bonfanti subject to Defendants' unlawful late fee policy.

## IV.     FACTUAL BACKGROUND

18.     Defendants own, control, lease, and manage residential properties throughout California, and have done so since at least four years prior to the filing of the original complaint.

19.     Plaintiff Munguia-Brown was a tenant in an EQR-owned apartment in East Palo Alto from approximately 2011 when Defendants purchased her building until approximately February 2016 when Defendants sold her building. When Defendants acquired Ms. Munguia-Brown's building, they stepped into the shoes of the lessor in her existing lease. The prior lease provided for the charging of a late fee when rent was not paid on time, but did not provide for charging of late fees on late fees or other outstanding balance amounts. The prior owners did not charge late fees on outstanding balances. Consistent with their statewide policy, and consistent with the standard Equity Residential lease (although Ms. Munguia-Brown had never entered into that lease), Defendants charged her a late fee of $50 per month on multiple occasions if she did not pay her rent and any other outstanding balance within Defendants' deadline, as well as when she made timely rent payments but had an outstanding balance.

20.     Plaintiff Norma Rodriguez was a tenant in an EQR-owned apartment in East Palo Alto from approximately 2011 when Defendants purchased her building until approximately February 2016 when Defendants sold her building. When Defendants acquired Ms. Rodriguez's building, they

636299.15

stepped into the shoes of the lessor in her existing lease.  The prior lease provided for the charging of a late fee when rent was not paid on time, but did not provide for charging of late fees on late fees or other outstanding balance amounts.  The prior owners did not charge late fees on outstanding balances. Consistent with their statewide policy, and consistent with the standard Equity Residential lease (although Ms. Rodriguez had never entered into that lease), Defendants charged her a late fee of $50 per month on multiple occasions if she did not pay her rent and any other outstanding balance within Defendants' deadline, as well as when she made timely rent payments but had an outstanding balance.

21.    Plaintiff Angelina Magaña was a tenant in an EQR-owned apartment in East Palo Alto from approximately 2011 when Defendants purchased her building until approximately February 2016 when Defendants sold her building.  The prior lease provided for the charging of a late fee when rent was not paid on time, but did not provide for charging of late fees on late fees or other outstanding balance amounts.  The prior owners did not charge late fees on outstanding balances. Consistent with their statewide policy, and consistent with the standard Equity Residential lease (although Ms. Magaña had never entered into that lease), Defendants charged her a late fee of $50 per month on multiple occasions if she did not pay her rent and any other outstanding balance within Defendants' deadline, as well as when she made timely rent payments but had an outstanding balance.

22.    Plaintiff David Bonfanti has been, and currently is, a tenant in an EQR-owned apartment in Los Angeles since October 2014.  Mr. Bonfanti entered into EQR's standardized lease, which specifies that Defendants will assess a 5% (or minimum of $50) late fee if his rent payment or any other outstanding fees or other balances are received after Defendants' deadline.  Defendants have assessed him a late fee of 5% of his monthly rent on multiple occasions.

**A.  Imposition of Excessive Late Fees**

23.    Defendants' policy and practice, throughout California, is to assess residential tenants a fee of five percent of rent or a minimum of $50 for the late payment of rent regardless of the amount of rent owed or the length of time which elapses from the time rent is due and the time that the tenant pays that rent.  A tenant's failure to timely pay rent constitutes "a breach of an obligation to pay money

636299.15

only" pursuant to Civil Code section 3302, as held by the California Supreme Court in *Knight v. Marks*, 183 Cal. 354, 357 (1920) and other published decisions.

24. Plaintiff Munguia-Brown's lease provided her rent was due on the first day of the month, with a grace period of four days. Defendants acknowledge receiving Ms. Munguia-Brown's full February 2012 rent, including past late fees, on February 9, 2012. Defendants assessed a $50 late fee against Ms. Munguia-Brown, though she paid her monthly rent only four days past the grace period. This resulted in an interest rate of 324 percent per annum based on the rent of $1,409.75 being late by four days. Defendants again assessed a $50 late fee in April 2012 after Ms. Munguia-Brown paid her rent in full on April 13, 2012, eight days late. On April 13, 2012, she paid this $50 late fee. Defendants charged Ms. Munguia-Brown Excessive Late Fees in other months as well.

25. Plaintiff Norma Rodriguez's lease provided her rent was due on the first day of the month, with a grace period of five days. Defendants acknowledge that they received her full rental payment for August 2012 on August 6, one day after the five-day grace period. On August 7, 2012, after receiving rent a single day past the grace period, Defendants assessed a $50 "Auto Late Fee" against Ms. Rodriguez. This resulted in an interest rate of 1,824 percent per annum based on the rent of $1,000.80 being late by one day. This happened again in January 2013 when Defendants assessed a $50 fee for Ms. Rodriguez's payment of rent just two days after the grace period.

26. Plaintiff Angelina Magaña's lease provided her rent was due on the first day of the month, with a grace period of five days. Defendants acknowledge receiving Ms. Magaña's full December 2012 rent on December 8, 2012. Defendants assessed a $50 late fee against Ms. Magaña, though she paid her monthly rent only three days past the grace period. This resulted in an interest rate of 644 percent per annum based on the rent of $944.38 being late by three days. Defendants also assessed a $50 late fee in November 2012 when Ms. Magaña paid her rent five days after the grace period, representing an interest rate of 386 percent per annum on Plaintiff's then $944.38 rent. Defendants charged Ms. Magaña Excessive Late Fees in other months as well.

27. Plaintiff David Bonfanti's lease with Defendants provided his rent was due on the first of the month with a grace period of two to four days (depending on the year). Defendants

636299.15

acknowledge receiving Mr. Bonfanti's full January 2016 rent by January 7, 2016 so that Plaintiff Bonfanti carried a zero balance on his account ledger.  However, Defendants assessed a $113.15 late fee against Mr. Bonfanti (5% of his rent) even though he paid his full monthly rent only five days past the grace period.  This resulted in an interest rate of 365 percent per annum based on the rent of $2,263.00 being late by five days.  Defendants charged Mr. Bonfanti Excessive Late Fees in other months as well.

28.     California Civil Code § 1671(d), governing parties to a residential property lease, states that "a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."  Defendants' collection of a fee of $50 or 5 percent of rent for delays of as little as one to several days in their receipt of tenants' rent payments far exceeds Defendants' damages caused by the delay.  Defendants' actual damages sustained by their late receipt of rent due are neither impracticable nor extremely difficult to fix.  As the California Supreme Court has held, "[w]hen a tenant fails to pay rent as provided in the lease, the amount of damage is not extremely difficult to fix, and it certainly is not impracticable to fix the amount of such damage."  *Jack v. Sinsheimer*, 125 Cal. 563, 566 (1899).  The California Supreme Court reiterated this presumption again in *McCarthy v. Tally*, 46 Cal. 2d 577, 583 (1956), where the Court cited other California cases and explained that "[o]rdinarily, provisions for liquidated damages will not lie for failure to pay rent as provided in the lease."  More recently, in *Garrett v. Coast & Southern Federal Savings & Loan Association*, 9 Cal. 3d 731, 741 n.11 (1973), the California Supreme Court again stated that "[d]amages resulting because of the wrongful withholding of money are fixed by law [in Civil Code § 3302] and other damages . . . such as administrative and accounting costs, would not appear to present extreme difficulty in prospective fixing."

29.     Defendants' late fee is an arbitrary amount which functions as a penalty.  Any marginal interest accumulated or other damages that Defendants sustain due to the delay in rent payments are definite and easily ascertainable, as the California Supreme Court has long held.  Moreover, when

636299.15

Defendants seek to collect late rent payments by filing an unlawful detainer action, they charge attorney's fees and costs of filing the action to those tenants, demonstrating that those costs are not among the damages that result when rent is paid late (even assuming that such costs could lawfully be recouped via late fees).

30.     On information and belief, Defendants have never made a reasonable endeavor to estimate a fair average compensation for the losses sustained when a tenant pays rent late, as required for a liquidated damages provision under California Civil Code § 1671(d) to be enforceable.

**B. <u>Successive Imposition of Excessive Late Fees on Small Balances</u>**

31.     Defendants impose Excessive Late Fees month after month even when a tenant is carrying a minimal balance. This policy is set forth in Defendants' standard lease, which Plaintiff Bonfanti executed. This policy was also put into practice with Plaintiffs Mungia-Brown, Rodriguez, and Magaña and the sub-class, even though it was not disclosed or agreed to in their leases.

32.     Defendants record fees as a debt on tenants' rent ledger or account. In addition, Defendants do not notify tenants that they have accrued such debt at the time it is incurred. Upon receiving tenants' subsequent monthly rent payments, Defendants apply that payment to the previously recorded debt, rather than the rent due for the month in which payment is made. Defendants then consider that month's rent as not paid in full and again assess another Excessive Late Fee despite tenants' full and timely monthly rent payment. As a result, Defendants charge a late fee of at least $50 on a balance that may be as small as $100. As a result, tenants incur repeated Excessive Late Fees.

33.     On February 28, 2014, Plaintiff Munguia-Brown paid Defendants her complete rental payment for the month of March 2014 plus additional money. On March 7, 2014, Defendants assessed Ms. Munguia-Brown a $50 "Auto Late Fee" despite her having made a complete and timely rental payment for that month because she had a balance of previously assessed fees and other charges of $322.02.

34.     In June 2014, this happened again. Ms. Munguia-Brown paid Defendants her complete rental payment for June on May 30, 2014. On June 7, 2014, Defendants assessed Ms. Munguia-Brown a $50 "Auto Late Fee" despite her having made a complete and timely rental payment for that month

636299.15

because she had a balance of previously-assessed late fees and other charges of $429.04.  It was not until around June of 2014 that Defendants informed Ms. Munguia-Brown that she was incurring late fees every month because she was carrying a balance.

35.     Ms. Munguia-Brown paid hundreds of dollars in late fees over the months of January 2012, February 2012, April 2012, and August 2013.

36.     On July 4, 2012, Plaintiff Norma Rodriguez paid Defendants her complete rent payment for that month.  On July 7, 2012, Defendants assessed Ms. Rodriguez a $50 "Auto Late Fee" despite her having made a complete rental payment for that month during the five day grace period set forth in her lease agreement.  Defendants assessed this late fee despite a timely rent payment because Ms. Rodriguez had a balance of $100 in previously-assessed late fees.

37.     In September 2012, this happened again. Ms. Rodriguez paid Defendants her complete rental payment for September on September 4, 2012.  On September 7, 2012, Defendants assessed Ms. Rodriguez a $50 "Auto Late Fee" despite her having made a complete and timely rental payment for that month because she had a balance of $201.10 of previously-assessed late fees.  Ms. Rodriguez received a receipt for this rental payment that explicitly stated the payment was "FOR RENT" for the days of "9.1.12 to 9.30.12."  Despite issuing her this receipt, Defendants applied her payment to her prior late fees in order to assess a new late fee despite her timely payment.  Ms. Rodriguez only received notice that Defendants had assessed these Excessive Late Fees after several late fees had accumulated in mid-September 2012 and the balance exceeded $200.

38.     Ms. Rodriguez paid Defendants $180 of accumulated late fees in October 2012.

39.     On May 4, 2013, Plaintiff Angelina Magaña paid Defendants her complete rental payment for that month.  On May 7, 2013, Defendants assessed Ms. Magaña a $50 "Auto Late Fee" despite her having made a complete and timely rental payment for that month.  Ms. Magaña received no notice that Defendants had assessed this late rent fee.  Defendants did not advise Ms. Magaña they were assessing late fees when she was paying her rent on time because she was carrying a balance consisting primarily of late fees from prior months.

636299.15

40.    Ms. Magaña paid hundreds of dollars in accumulated late fees in September 2012, October 2012, November 2012, and August 2013.

41.    Plaintiff Bonfanti's standard EQR lease states that late fees and other charges will be considered rent and that he will be charged a late fee if "rent," including prior late fees, is not received when it is due.  Thus, if he carries over a late fee of $113.15 (5 percent of his monthly rent) in the future, his lease provides that he will incur a subsequent late fee of another $113.15 even if the next month's rent is paid on time.

## V.    CLASS ACTION ALLEGATIONS

42.    This action is maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4)  for Defendants' violations of California Civil Code § 1671(d) and California Business and Professions Code § 17200 *et seq*.  Plaintiffs are representative of other tenants at Defendants' properties throughout California and are acting on behalf of their interests.  The similarly situated tenants are known to Defendants and are readily identifiable and locatable through Defendants' own business records.  The Class that Plaintiffs seek to represent is defined as follows:

> All persons who are or were tenants of Defendants' properties in the State of California at any time from four years prior to the date of the filing of the original complaint through the date of class certification who have been or are subject to Defendants' late fee policy.

Throughout the Class Period, Class Members were tenants of Defendants' properties and all of them have been subjected to Defendants' Excessive Late Fee policy.  Throughout the Class Period, Defendants have charged Class Members Excessive Late fees both for being both late in paying rent and for carrying a minimal balance even when they paid the current rent on time.  Defendants' Excessive Late Fee policy and practice violates California law in that (1) determination of Defendants' actual damages would not be "impracticable or extremely difficult," Cal. Civ. Code § 1671(d), and (2) the amount selected by Defendants in these contracts of adhesion – $50 or 5% of late rent – does not represent a reasonable endeavor to estimate fair compensation for the loss sustained when rent is paid late, or when any outstanding balance, no matter how small, is paid late.  As such, Class Members, and each of them, have been subjected to Defendants' Excessive Late Fee policy and

636299.15

practice in violation of California Civil Code § 1671(d).  Defendants' Excessive Late Fee policy and practice is therefore an unlawful business act or practice, as well as an unfair business practice pursuant to California Business and Professions Code § 17200, *et seq.*  Additionally, the practice of charging late fees on top of an accumulated balance of late fees is sometimes referred to as "pyramiding" and federal law prohibits banks from engaging in the same unfair scheme.  *See* 12 C.F.R. § 227.15(a); 12 C.F.R. § 226.36(c)(ii).  If this practice is unlawful in the banking arena, it is at minimum unfair in the context of this case.  Defendants' fees have very little relation to their costs that can lawfully be attributed to late rent or minimal balances and thus result in unethical and unscrupulous profits for Defendants that are oppressive and financially harm tenants.

Plaintiffs Munguia-Brown, Rodriguez, and Magaña also seek to represent a sub-class defined as follows:

> All persons who are or were tenants of Defendants' properties in the State of California at any time from four years prior to the date of filing of the original complaint through the date of class certification whose tenancy with Defendants was governed by a predecessor lease assumed by Defendants that did not include a provision for the charging of late fees on outstanding balances other than late rent itself.

43.     Members of the sub-class are known to Defendants and are readily identifiable and locatable through Defendants' own business records, including leases and rent ledgers displaying late fees charged.

44.     Upon information and belief, when Defendants acquire a property, they do not require all existing tenants to sign EQR's standardized lease, but step into the shoes of the prior lessor.  The Named Plaintiffs representing the proposed sub-class signed, for example, the "California Apartment Association Approved Form" lease, which does not include a provision for the charging of late fees on late fees or other outstanding balance amounts.

45.     The members of the sub-class were charged by Defendants, and paid to Defendants, late fees that were not provided for under the terms of their agreement, consisting of late fees charged on outstanding balances other than the present month's rent due, as alleged above.  Such fees represent liquidated damages for the breach of lease contracts to which tenants did not agree, and are therefore

636299.15

void under Civil Code § 1671(d).  Defendants' policy and practice of charging such fees is an unlawful and unfair business act or practice in violation of California Business and Professions Code § 17200, *et seq*.  All such fees that Defendants collected must be disgorged from Defendants and returned to the members of the sub-class.

**A.  Numerosity of Class**

46.     The members of the class, as well as the sub-class, as defined above are so numerous that joinder of all Class Members is impracticable.  Although the precise number of such tenants is unknown, Plaintiffs believe that thousands of tenants who rent or have rented Defendants' properties and have been assessed late fees by Defendants would fall within the putative Class, and that significantly more than 40 class members would fall within the sub-class.  The exact numbers are easily ascertainable from Defendants' own business records, which are presently within Defendants' control.

**B.  Existence and Predominance of Common Questions of Fact and Law**

47.     There are questions of law and fact common to the class that predominate over any questions affecting only individual members of the class including, without limitation, whether, as alleged herein, Defendants have:

a.     Included late fees in their lease agreements that equate to unlawful liquidated damages;

b.     Charged such late fees, as liquidated damages, when determining the actual amount of damages is neither impracticable nor extremely difficult;

c.     Selected a late fee amount without conducting the required reasonable endeavor to estimate whether it would represent fair compensation for the loss sustained;

d.     Charged late fees that do not represent a fair compensation for the loss sustained;

e.     Engaged in unlawful business practices that violate California Civil Code § 1671; and

636299.15

f.      Engaged in unfair business practices by charging tenants excessive late fees both on late rent and on minimal balances.

48.     There are questions of law and fact common to the sub-class that predominate over any questions affecting only individual members of the sub-class including, without limitation, whether, as alleged herein, Defendants' policy of charging late fees on outstanding balances other than the current monthly rental payment due, despite the fact that the leases of sub-class members did not authorize such charges, violated section 1671(d) and/or was an unlawful or unfair business practice; and whether such payments should be disgorged from Defendants and returned to the sub-class members, with interest.

**C. Typicality**

49.     The claims of the named Plaintiffs are typical of the claims of the class they seek to represent.  Plaintiffs and Class Members are or were tenants of Defendants' owned, leased, or managed properties.  Plaintiffs and Class Members have the same rights to not be subjected to Excessive Late Fees under California Civil Code § 1671.  Plaintiffs and all Class Members were subjected to the same violations of their rights under California Law by Defendants and have suffered damages, including Excessive Late Fees, resulting from Defendants' wrongful conduct.

50.     Named Plaintiffs Munguia-Brown, Rodriguez, and Magaña are typical of the members of the sub-class, in that Defendants stepped into the shoes of their prior lessor, and charged them fees on fees and other outstanding balances in accordance with Defendant's uniform policy, despite the fact that these Plaintiffs' leases did not authorize such charges.

51.     In addition, Plaintiff Bonfanti and Class Members who are current tenants of Defendants in California are entitled to equitable relief, as permitted by law, because Defendants' actions and violations of state statutes have harmed Class Members, will continue to harm Class Members, and constitute unlawful and unfair business practices, especially when compared to those of competitors that comply with California law.

636299.15

**D.  Adequacy of Representation**

52.     Class Representative Plaintiffs will fairly and adequately represent and protect the interests of the Class Members and members of the sub-class.  Plaintiffs' interests are not in conflict with those of the Class Members or members of the sub-class.  Plaintiffs' counsel are competent and experienced in litigating large class actions and other complex litigation matters, including housing-related matters like this case.

**E.  Superiority of Class Action**

53.     A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Each Class Member is entitled to recovery as each has been subjected to or damaged by Defendants' illegal and unfair policy and/or practice of charging liquidated damages that equate to Excessive Late Fees; charging Excessive Late Fees as liquidated damages when determining the actual amount of damages is neither impracticable nor extremely difficult; selecting a Late Fee amount without conducting the required reasonable endeavor to estimate whether it would represent fair compensation for the loss sustained; engaging in business practices that were and are unlawful as they violate California Civil Code § 1671; and engaging in business practices that were and are unfair by charging tenants Excessive Late Fees for late rent and unpaid balances.

54.     The damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution of this litigation.  Individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit against Defendants to recover such small amounts of damages.

55.     In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about the legality of Defendants' Excessive Late Fee policy and practice.

## FIRST CAUSE OF ACTION
### UNLAWFUL LIQUIDATED DAMAGES
### (California Civil Code § 1671)

56.     Plaintiffs hereby incorporate Paragraphs 1 through 55 above as though fully set forth herein.

636299.15

57.     During the Class Period, Defendants rented real property to Plaintiffs and Class Members for use as dwellings by Plaintiffs, Class Members, or those dependent upon Plaintiffs or Class Members for support, pursuant to California Civil Code § 1671(c)(2).

58.     California Civil Code § 1671(d) provides that "a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

59.     During the Class Period, on information and belief, any actual damages Defendants sustained as a result of Plaintiffs' and Class Members' late payment of rent or other outstanding balance amounts are neither impracticable nor extremely difficult to fix.  Neither is Defendants' late rent fee the result of a reasonable effort to estimate fair compensation for Defendants' actual damages sustained due to their late receipt of rent or other outstanding balance amounts from Plaintiffs or Class Members.

60.     The lease agreements of the proposed sub-class contain no provision about Defendants' policy or practice of charging late fees on outstanding balances.  Accordingly, members of the sub-class have not agreed upon an amount of damage that would be sustained by a tenant's failure to timely pay a late fee, as required by Civil Code § 1671(d).

61.     Defendants' Excessive Late Fees are accordingly unlawful pursuant to California Civil Code § 1671(d).  Plaintiffs and Class Members are entitled to restitution of all fees Defendants have collected from tenants for the late payment of rent or other outstanding balances, as well as interest and other relief as specifically prayed for herein.

## SECOND CAUSE OF ACTION
### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
#### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

62.     Plaintiffs hereby incorporate Paragraphs 1 through 61 above as though fully set forth herein.

636299.15

63.     California Business and Professions Code § 17200, *et seq.*, prohibits businesses from engaging in unlawful, unfair, or fraudulent business acts or practices.  Defendants' policy and practice of imposing and collecting Excessive Late Fees from Plaintiffs and Class Members as alleged in the First Cause of Action above constitute unlawful acts and practices prohibited by California Civil Code § 1671 and, as such, are also prohibited by the UCL (Cal. Bus. & Prof. Code §§ 17200-17208).

64.     Defendants' Excessive Late Fee policy and practice is also unfair as Defendants impose Excessive Late Fees on tenants even when tenants are only slightly late in paying rent and/or when tenants pay their current monthly rent on time but carry a minimal balance consisting of late fees or other charges, resulting in effective annual interest rates that are unfairly high.  Defendants' fees have very little relation to their costs that can lawfully be attributed to late rent or minimal balances and thus result in unethical and unscrupulous profits for Defendants that are oppressive and financially harm tenants.

65.     The practice of charging late fees on outstanding late fees and other balance amounts other than the monthly rent itself is an also an unfair business practices, analogous to unlawful "pyramiding" by banks.

66.     Defendants' practice of charging members of the sub-class late fees for late payment of charges other than monthly rent, such as late fees on outstanding late fees, is not authorized by the leases of the sub-class members, and is therefore an unfair business practice.

67.     Plaintiffs and Class Members have suffered injury in fact and lost money or property pursuant to California Business and Professions Code § 17204 as a result of Defendants' unlawful and/or unfair business acts or practices.

68.     As a result of these unlawful business acts and practices, Defendants have reaped unfair benefits and illegal profits, at the expense of Plaintiffs and all similarly-situated tenants and former tenants of Defendants.  Plaintiffs and Class Members are therefore entitled to an order of restitution requiring Defendants to restore to Plaintiffs and Class Members the money which Defendants have acquired by means of their unlawful and unfair business acts and practices, including excessive late

636299.15

1    fees, with accrued interest.  All such remedies are cumulative of relief available under other laws,

2    pursuant to California Business and Professions Code § 17205.

3    **VI.**   <u>**PRAYER FOR RELIEF**</u>

4          WHEREFORE, Plaintiffs, on behalf of themselves and all Class Members, seek the following

5    relief against Defendants and each of them as follows:

6          69.      That the Court determine that this action may be maintained as a class action under

7    Federal Rule of Civil Procedure 23, and define the Class and sub-class as requested herein;

8          70.      That the Court find and declare that Defendants' late fees and policy and practice of

9    assessing such late fees against Plaintiffs and Class Members are unlawful pursuant to California Civil

10    Code § 1671(d);

11          71.      That the Court find and declare that Defendants' late fees and policy and practice of

12    assessing such late fees against Plaintiffs and Class Members are unlawful and unfair under the UCL,

13    Business and Professions Code § 17200, *et seq.*;

14          72.      That the Court find and declare that Defendants' late fees and policy and practice of

15    assessing such late fees for outstanding charges other than rent against Plaintiffs and members of the

16    sub-class are unfair under the UCL, Business and Professions Code § 17200, *et seq.*;

17          73.      That Plaintiffs and the class be awarded restitution of all Excessive Late Fees collected

18    by Defendants, and interest thereon, pursuant to Code of Civil Procedure § 1060, Business and

19    Professions Code § 17200, *et seq.*, and Civil Code § 3827;

20          74.      That the Court award any and all appropriate injunctive and declaratory relief to prevent

21    further repetition of the alleged unlawful and unfair business acts and practices;

22          75.      That Plaintiffs and the Class be awarded reasonable attorneys' fees and costs, pursuant

23    to California Code of Civil Procedure § 1021.5, the terms of the lease agreements between Class

24    Members and Defendants, and any other applicable law; and,

25          76.      That the Court award such other and further relief as this Court may deem appropriate.

26

27

28

19

636299.15

1    Dated:  February 8, 2017

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO


/s/ Megan E. Ryan
Megan E. Ryan

Attorneys for Plaintiffs

SECOND AMENDED COMPL. FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF & DAMAGES; CLASS ACTION
CASE NO.: 4:16-CV-01225-JSW

636299.15