UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVANNI MUNGUIA-BROWN, et al., Plaintiffs, v. EQUITY RESIDENTIAL, et al., Defendants. | Case No. 16-cv-01225-JSW (MEJ) **DISCOVERY ORDER** Re: Dkt. Nos. 52, 53, 54, 55, 56 |

## INTRODUCTION

Pending before the Court are five discovery letter briefs. *See* Dkt. Nos. 52-56. The Court scheduled a telephonic conference for June 20, 2017 to address the parties' disputes (Notice, Dkt. No. 57), but Counsel for Plaintiffs informed the undersigned's courtroom deputy by email that the parties would be unavailable to speak with the Court at that time because they would be attending a deposition in this matter. In the interest of time, the Court resolves these letter briefs without the benefit of oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).

Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

In this putative class action, Plaintiffs allege that since 2008, Defendants have charged their tenants late fees that violate California Civil Code § 1671. *See* First Ltr. Br. at 1, Dkt. No. 52. Whether the provision is lawful under California law depends in part on whether Defendants adopted the late fee as an attempt to recover actual costs they incurred as a result of late rent payments, or whether late fees serve as a source of profits. *See* Second Ltr. Br. at 1, Dkt. No. 53. The Presiding Judge in this matter referred discovery matters to the undersigned. *See* Referral

Order, Dkt. No. 49. Plaintiffs' deadline for moving for class certification is August 18, 2017. First Ltr. Br. at 4.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discovery need not be admissible in evidence to be discoverable. *Id.* However, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee notes (2015 amendments). Thus, there is "a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts." *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing advisory committee notes for proposition that parties share a "collective responsibility" to consider proportionality and requiring that "[b]oth parties . . . tailor their efforts to the needs of th[e] case").

Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1).

## DISCUSSION

The Court explicitly ordered the parties to discuss the proportionality of the disputed

requests during their in-person meet and confer efforts. *See* Order, Dkt. No. 50. Despite this prior guidance, Plaintiffs do not address the proportionality of their requests in the letter briefs.

**A.     Emails of Custodians Involved in Decision to Change Late Fee Policy in 2008**

Plaintiffs (1) seek the identity of employees involved in the decision to adopt the late fee policy in 2008; (2) request that Defendants certify whether the email accounts for those employees have been destroyed, and if not, the format in which the emails still exist; (3) ask the Court to order Defendants to search any emails that exist in searchable format using six search terms; and (4) demand Defendants explain to the Court in writing "whether such emails have, in fact, been deleted, or whether they are recoverable." *See* First Ltr. Br. at 3-4.

Defendants respond that they have not refused to identify custodians, that the at-issue custodians stopped working for Equity Residential (the "Company") "long before" Plaintiffs filed this lawsuit, and that emails from the relevant time period no longer exist unless they were specifically saved into an electronic file or printed and saved in a hard copy folder. *Id.* at 4. Defendants have searched those potential repositories and produced the responsive information. *Id*.

No later than June 30, 2017, Defendants shall file a declaration describing when the Company's current email system was implemented, whether emails from departed employees migrated to the new system or otherwise preserved within the new email system, and what and how data associated with the old system were preserved. The parties have discussed searching for data associated with Cummings, O'Shea, and Santee. *Id*. at 3. In the declaration, Defendants shall identify any other custodians who were involved in the decision to adopt the late fee at issue in this lawsuit. Defendants shall state each of these custodians' dates of employment with the Company. For each custodian identified, Defendants also shall confirm that they searched electronic and hard-copy files for responsive information, and describe the searches they conducted. The Court may order further briefing or further discovery based on the declaration.

**B.     Draft Budgets**

Plaintiffs request Defendants produce draft budgets provided to the approximately 144 properties at issue in this case between 2010 to present. Second Ltr. Br. at 1-2, Dkt. No. 53. They

3

believe these documents will show Defendants' anticipated late fee revenues as well as costs, including costs arising from late payment. *Id.* at 1 ("Whether Defendants view late fees as a profit source, as opposed to merely a recoupment of costs, is directly relevant to the common, classwide question of whether Defendants' late-fee policy is an invalid liquidated damages provision."). Defendants object that the spreadsheets at issue contain 220 rows of financial data, only one of which relates to late fees; that the request is not proportional to the needs of the case and unduly burdensome because the information is not relevant to class certification; and that Plaintiff's theory makes no sense because "[t]he payment of any late fee, no matter how small, constitutes income (i.e., money received)." *Id.* at 3. They also object the documents are confidential. Plaintiffs respond a protective order was entered in the action (*see* Dkt. No. 44), and that discovery is not bifurcated.

The Court finds the information regarding late fees is relevant to Plaintiffs' claims, and that Plaintiffs are entitled to see discover the financial information that may be contained in the budget documents, not just the one line Defendants argue is relevant. Defendants do not explain why, and the undersigned finds no indication that, the protective order inadequately protects this type of information. Plaintiffs' request, however, is not proportional to the needs of the case, at least at this stage of the proceedings. No later than July 7, 2017, Defendants shall produce un-redacted budgets for years 2010 to the present for the two properties where Plaintiffs lived.

**C. Employees with Knowledge of PwC Report**

Plaintiffs served an interrogatory asking Defendants to identify "all individuals who are or were employed by any Defendant or any affiliate thereof who have knowledge about the contents of the PwC Report." Third Ltr. Br., Dkt. No. 54. Defendants answered with a single name, in-house lawyer James Fiffer. Plaintiffs complain that Defendants will not state in their interrogatory response that Mr. Fiffer was the "only" current or former employee of EQR or its affiliates with knowledge of the PwC Report. Defendants have provided a verified original and supplemental interrogatory response that objects to the request on a number of grounds and reiterates that Jim Fiffer has knowledge of the report. *See* Third. Ltr. Br., Ex. A (Responses to Interrogatories). The Court agrees this is responsive to the Interrogatory and that there is nothing to add.

4

## D. Redactions

Plaintiffs argue Defendants' "wholesale redaction" of responsive documents on relevance grounds is improper. *See* Fourth Ltr. Br., Dtk. No. 55. Plaintiffs do not suggest any basis for concluding that any of the redacted information was in fact relevant. On the other hand, Defendants do not identify any permissible basis for redacting this information; they argue only that the unredacted headers allow Plaintiffs to confirm that the document is not "even remotely germane" to the lawsuit. Defendants suggest the Court review the redactions in camera. The Court declines Defendants' invitation to review the redactions. No later than July 7, 2017, Defendants shall produce to Plaintiffs un-redacted versions of the documents. Within two weeks of receiving the documents, Plaintiffs shall file a status report describing any relevant information that was redacted. Within one week of receiving the status report, Defendants shall respond. If relevant information was redacted, Defendants shall shoulder the costs of reproducing the information; if no relevant information was redacted, Plaintiffs shall do so.

## E. Defendants' Costs

Plaintiffs request Defendants produce documents pertaining to three categories of "costs" Defendants incur when tenants pay their rent late: the cost of implementing the computer system Defendants use to track rent payments; the cost of Defendants' loss-of-use-funds; and aggregate collection agency costs and contractual arrangements with collection agencies. Fifth Ltr. Br., Dkt. No. 56. Defendants object the request is burdensome. *Id.* at 3.

The Court finds the information is relevant to Plaintiffs' claims, but that the request is not proportional to the needs of the case, at least at this stage of the proceedings. No later than July 17, 2017, Defendants shall produce responsive documents relating to the three categories of "costs" described above from 2010 to the present for the two properties at which Plaintiffs resided.

## CONCLUSION

The undersigned appreciates that discovery has not been bifurcated by the Presiding Judge, and that Plaintiffs are entitled to both merits and class discovery. Nevertheless, unless and until the Presiding Judge certifies a class, the undersigned finds the scope of some of Plaintiffs' discovery requests is much too expansive. Should a class be certified, and should Plaintiffs be

able to show their requests are proportional to the needs of the case, they may renew their requests.

**IT IS SO ORDERED.**

Dated: June 20, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge