UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVANNI MUNGUIA-BROWN, et al.,<br>Plaintiffs,<br>v.<br>EQUITY RESIDENTIAL, et al.,<br>Defendants. | Case No. 16-cv-01225-JSW (MEJ)<br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 58, 59 |

The undersigned earlier resolved a number of discovery disputes the parties presented in five joint letter briefs, and ordered Defendants to provide additional information regarding their search for custodians and responsive emails. *See* Order, Dkt. No. 58. In response, Defendants submitted the declaration of James D. Fiffer. Fiffer Decl., Dkt. No. 59. Mr. Fiffer explains the Company (as the Court defined that term in its prior Order) switched to its current email system around March 2012, more than two years prior to the September 2014 filing of Plaintiff's lawsuit in Alameda Superior Court; transferred emails in employee inboxes to the new system, Google Gmail-for-Business; and additionally allowed employees to transfer emails saved in personal folders to the new system. *Id*. ¶¶ 6-7. Emails in personal folders that were not subject to litigation holds and that were not transferred to the new system by employees were purged and are irretrievable. *Id*. ¶ 7. Former employees' emails were not transferred to the new email system, except those emails responsive to existing litigation holds. *Id*. ¶ 8. In March 2012, there were no pending lawsuits related to late fees, and thus no litigation holds covering documents relating to late fees. *Id*.

Mr. Fiffer identifies eleven individuals who, to the best of his knowledge, were involved in the decision to adopt the late fee policy in 2008; only six of the eleven individuals he identifies

were still employed by the Company when it adopted the new email system in March 2012: Mr. Fiffer, Denise Beihoffer, Bruce Lavine, David Santee, Fred Tuomi, and Chris Jenkins. *Id*. ¶ 10. He also described the searches Defendants conducted to discover responsive documents. Defendants searched hard copy folders kept by Fiffer and Beihoffer; searched Fiffer's email account using the search terms "PwC", "Price Waterhouse" and "late fee"; searched folders within Beihoffer's email account that might contain emails related to late fees using the same keywords; and searched "emails" for Jenkins and Santee for the time frame prior to December 31, 2008 using the single search term "late fee." *Id.* ¶¶ 11-14. Defendants do not explain what "emails" were searched for Jenkins and Santee (i.e., whether their entire email accounts were searched, or only folders within their email accounts, whether any archived emails were searched, etc.). Although Fiffer declares counsel helped Beihoffer review the folder labels in her account for relevance, he does not provide details about the search process: whether the custodians, IT, and/or counsel conducted these searches; or whether the custodians and/or counsel reviewed the emails for relevance.

Fiffer declares Lavine and Tuomi were not employees of or affiliated with the Company when it switched to the new email platform in March 2012 (Fiffer Decl. ¶ 15), but the chart Fiffer includes shows Lavine worked at the Company from November 1995 until September 2013, and Tuomi worked there from January 1994 through June 2013 (*id*. ¶ 10).

For those employees who were employed by the Company in March 2012, the Court finds Defendants' email searches were not sufficient. Using the single search term "late fee" likely would exclude many directly relevant documents. For example, if Fiffer and the other individuals listed did not exclusively use the term "late fee" (as opposed to "fees" or "five percent fee" or "liquidated damages") in their communications, simply searching for "late fee" would omit relevant emails. Importantly, it also is not clear whether the search for "late fee" would exclude documents referring to "late fee*s*." The Court agrees Defendants must do more with respect to at least Fiffer, Beihoffer, Jenkins, and Santee. The Court also is not convinced that December 31, 2008 is an appropriate cut-off date for Jenkins and Santee, absent evidence they were not involved in discussions about the recently-enacted late fee policy after that date. And as explained above,

2

there appears to be a discrepancy or some confusion about the termination dates for Lavine and Tuomi. Furthermore, the fact no litigation hold existed in March 2012 that was specifically related to litigation about late fees does not demonstrate that email regarding the late fee policy enacted in 2008 would not have been captured and preserved as part of a hold issued in unrelated litigation.

The Court accordingly orders the parties to meet and confer in person within the next ten days and to reach agreement regarding the following issues: whether Lavine and Tuomi were employed by the Company in March 2012 and whether any of their emails were transferred to the new system and should be searched; date ranges for the search; the identities of persons searching and/or reviewing emails for relevance; additional search terms; and steps Defendants took to ascertain whether documents preserved as part of unrelated litigation holds might also contain emails that are relevant to the claims and defenses asserted in this action. The parties' discussions must be guided by the proportionality concerns this Court has repeatedly invoked. *See also* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is . . . proportional to the needs of the case[.]"). If Gmail-for-Business does not support certain types of searches (e.g., wildcards), Defendants should offer practical alternatives to obtain the requested discovery. If the parties cannot reach agreement, they shall file a joint letter brief listing their alternative proposals and explaining why their proposals are proportional to the needs of the case.

**IT IS SO ORDERED.**

Dated: July 6, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge