IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVANNI MUNGUIA-BROWN, ANGELINA MAGANA, NORMA RODRIGUEZ, nad DAVID BONFANTI, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EQUITY RESIDENTIAL, ERP OPERATING LIMITED PARTNERSHIP, EQUITY RESIDENTIAL MANAGEMENT, LLC, EQR-WOODLAND PARK A LIMITED PARTNERSHIP, and EQR-WOODLAND PARK B LIMITED PARTNERSHIP,<br><br>Defendants. | No. C 16-01225 JSW<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION** |

Now before the Court is Plaintiffs' motion for class certification. Pursuant to Civil Local Rule 7-1(b), the Court finds that the motion is appropriate for decision without oral argument and HEREBY VACATES the hearing set for October 27, 2017. Having considered the parties' pleadings and relevant legal authority, the Court hereby GRANTS the motion.

**BACKGROUND**

Plaintiffs Javinna Munguia-Brown, Angelina Magana, Norma Rodriguez, and David Bonfanti ("Plaintiffs") filed this putative class action against Defendants Equity Residential and its corporate affiliates, ERP Operating Limited Partnership, Equity Residential Management, LLC, EQR-Woodland Park A Limited Partnership, and EQR-Woodland Park B Limited Partnership (collectively, "Equity" or "Equity Residential") which, during the class period, owned and operated

residential leased properties in California and charged their tenants late fees that Plaintiffs allege violate California Civil Code Section 1671(d) ("Section 1671(d)") and the California Unlawful Competition law, California Business and Professions Code Section 17200 *et seq.*

Under Section 1671(d), such late fees are "void" unless the landlord proves both: (1) it is "impracticable or extremely difficult" to determine the actual damages caused by a late payment of rent; and (2) the landlord arrived at the late fee amount by making a "reasonable endeavor . . . to estimate a fair average compensation for any loss that may be sustained" by the late payment of rent. *See Garrett v. Coast & S. Fed. Saving & Loan Assoc.*, 9 Cal. 3d 731, 738-39 (1973). If the landlord fails to may either of these showings, the late fees paid by tenants must be returned to them. However, these amounts may be reduced, or offset, by the amount of any actual costs the landlord can prove were suffered as a result of the tenant's late payment of rent.

By this motion, Plaintiffs assert that class certification is appropriate under Federal Rule of Civil Procedure 23(a) because: (1) the classes of California tenants that Plaintiffs seek to certify are so numerous that joinder of all members is impracticable; (2) there are questions of law or fact that are common to the class members; (3) the claims of the representative plaintiffs are typical of the claims of the classes they seek to represent; (4) the representative plaintiffs and their counsel will fairly and adequately protect the interests of the proposed classes. Plaintiffs assert that class certification is appropriate here under Rule 23(b) because: (1) the questions of law or fact common to the class members predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

First, Plaintiffs allege that Equity's standard late fee has remained in effect as the default at every property in California during the class period. Therefore, Plaintiffs seek to certify a class that consists of every tenant in the class period who was subject to the standard late fee provision, defined as:

**Standard Late Fee Class**
All Equity Residential tenants in California from September 3, 2010 until the date of class certification who were charged one or more late fee(s) under Equity Residential's standard late fee provision: 5% of the outstanding balance owed (called at 5% of the total amount of monthly recurring charges) or $50, whichever is greater.

Second, Plaintiffs seek to certify a separate class of tenants for several California properties where local rent control laws gave tenants the right to remain on preexisting leases once Equity acquired the property. One of those properties, acquired in 2011 by Equity, is the Woodland Park property located in East Palo Alto, where Equity implemented a policy of charging preexisting tenants the standard $50 late fee, regardless of the provisions of their preexisting leases. Therefore, Plaintiffs seek to certify a separate class that consists of the tenants of Woodland Park with preexisting leases who were charged the $50 late fee under this policy, defines as:

> **Woodland Park Preexisting Lease Class**
> All Equity Residential tenants in the Woodland Park Property from December 1, 2011 until Defendant sold the property in February 2016 who were charged one or more late fee(s) of $50 under Equity Residential's policy of charging a flat $50 late fee to tenants on pre-existing non-EQR leases.

Plaintiffs also seek the appointment of Plaintiff David Bonfanti as class representative for the Standard Late Fee Class, and Plaintiffs Javanni Munguia-Brown, Angelina Magana, and Norma Rodriguez as class representatives for the Woodland Park Preexisting Lease Class. Plaintiffs seek the appointment of counsel, Goldstein, Borge, Dardarian & Ho, Community Legal Services in East Palo Alto, and Nicholas & Tomasevic, LLP as class counsel. Finally, Plaintiffs seek an order approving the proposed class notices submitted with their papers and request that they be issued to the proposed class members.

The Court shall address other specific facts in the remainder of this order.

**ANALYSIS**

**A.      Class Certification Standard.**

Class certifications are governed by Federal Rule of Civil Procedure 23. As the moving parties, Plaintiffs bear the burden of "demonstrating that [they have] met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007); *see also Zinser v. Accufic Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended* 273 F.3d 1266 (9th Cir. 2001) (holding that the trial court must conduct a "rigorous analysis" to determine whether the requirements of Rule 23 have been met). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must be prepared to prove that there are in fact sufficiently numerous parties, common

3

questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011). "Class certification is not immutable, and class representative status could be withdrawn or modified if at any time the representatives could no longer protect the interests of the class." *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 203) (citing *Soc. Servs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 948-49 (9th Cir. 1979)).

The Supreme Court has noted that, frequently, a "rigorous analysis" of the Rule 23 factors "will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart*, 131 S. Ct. at 2551. The Court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action. *Id.* (noting that "[s]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."). "The district court is required to examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (citing *Wal-Mart*, 131 S. Ct. at 2552 n.6). "To hold otherwise would turn class certification into a mini-trial." *Id.* Ultimately, it is in the court's discretion whether a class should be certified. *See, e.g., Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003).

### 1.     Threshold Contentions of Claim Identification and Standing.

Equity contends that Plaintiffs fail to identify whether they seek class certification over both the claims of violations of Section 1671(d) and the Section 17200 claims. It is clear from Plaintiffs' notice of motion and briefing, that they intend to seek class certification for both claims. (*See, e.g.,* Dkt No. 64, Notice of Motion at 1; Dkt. No. 63-2, Plaintiffs' Motion at 1, 20.) Accordingly, the Court addresses the motion for class certification of both of the two causes of action alleged in Plaintiffs' complaint.

Equity further contends that Plaintiffs lack standing to sue because residents who were merely charged a late fee, as opposed to having paid a late fee, cannot seek reimbursement of monetary relief and therefore have not suffered injury. "Standing is a jurisdictional element that must be satisfied prior to class certification." *Lee v. Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997).

4

However, "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements" for standing. *See Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "[O]nce the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Kirola v. City and County of San Francisco*, 860 F.3d 1164, 1176 (9th Cir. 2017) (internal citations omitted).

Plaintiffs do not dispute that class members who were charged but failed to pay late penalties would not be entitled to money damages in restitution. Plaintiffs' complaint tracks the way in which Equity reports the charges and payments of late fees in their own records. Regardless, the common question of law would pertain to all members of the class and there is no contention that the named plaintiffs lack standing to seek restitution. Accordingly, the Court does not find the issue of standing bars decision on the merits of the request for class certification.

**2. Rule 23(a) Factors.**

Class certification is appropriate only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

**a. Numerosity.**

Equity does not dispute that Plaintiffs have met their burden to demonstrate that the classes are sufficiently numerous. The Standard Late Fee Class consists of tenants at approximately 150 California properties with a total of about 36,000 units, and Equity has represented that thousands of tenants have been charged the subject late fees during the class period. The Woodland Park Preexisting Lease Class consists of approximately 1,800 members. The Court finds Plaintiffs have met their burden on this factor.

**b. Commonality.**

Equity contends that the Court should deny the motion because Plaintiffs cannot satisfy the commonality requirement. Commonality requires that there be "questions of fact and law which

5

are common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (internal quotation marks omitted). Courts look for "shared legal issues or a common core of facts." *Id.* Where diverging facts underlie the individual claims of class members, courts consider whether the issues "at the heart" of those claims are common such that the class vehicle would "facilitate development of a uniform framework for analyzing" each class member's situation. *Id.* at 1123. The class claims "must depend on a common contention," which "must be of such nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. The "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 2008). The commonality requirement has been construed permissively and is "less rigorous than the companion requirements of Rule 23(b)(3)." *Id.*

Plaintiffs contend that common questions of fact abound in this case relating to the centralization of the policy among Equity's various California properties, the accounting for the late payments and fees assessed, the same late fee provision in the residential leases, and the process Equity underwent when setting the uniform fee policies, and Equity's record-keeping practice to help track costs and fees. Plaintiffs argue that common issues of law are prevalent because the dispositive questions on liability "generate common answers apt to drive the resolution of the litigation." *Abdullah v. U.S. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (citing *Wal-Mart*, 546 U.S. at 350). The test for determining whether Section 1671(d) has been violated turns on whether Equity can prove that the costs arising from a late payment can be fixed and whether they selected a late fee based upon a reasonable endeavor to approximate those costs. *See Garrett*, 9 Cal. 3d at 738-39.

In response, Equity argues that when determining whether common questions predominate under Rule 23, the Court must identify both the relevant causes of action and the affirmative

6

defenses, taking into account the evidence necessary to establish each element of both the claims and of the defenses. Equity's affirmative defenses include the voluntary payment doctrine which, it argues, cannot be adjudicated on a classwide basis. Under the voluntary payment doctrine, a party engaged in a dispute over the validity of a debt who agrees to settle the dispute by making payment, is barred from later recovering the payment. *See, e.g., Am. Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581, 587 (1961); *see also* Restatement 3d of Restitution and Unjust Enrichment (2011), § 6 cmt. e (voluntary payment doctrine applies to "money voluntarily paid in the face of a recognized uncertainty as to the existence or extent of the payor's obligation").

Without making a determination regarding the merits of the affirmative defense, the Court finds that regardless whether Equity is successful in demonstrating that the payment of any particular late fee was made voluntarily with full knowledge of the facts and without the tenant feeling compelled to make the payment, the affirmative defense does not defeat class certification. Rather, the Court finds that such a defense, if applicable, would be considered an offset to the specific collection of restitution for any particular tenant, or to the group en masse. *See Hahn v. Massage Envy Franchising, LLC*, 2014 WL 5099373, at *12 (S.D. Cal. April 15, 2014) (holding that while defendant's argument regarding offsets "are relevant only to the calculation of restitution for each putative class member. While such calculations may be individualized, that is insufficient to defeat class certification.") Should Plaintiffs prevail on their Section 1672(d) claim and attendant Section 17200 claim, Equity will be tasked with the computation of their actual costs, including any payments of late fees received from potential class members. It appears from the record submitted to the Court thus far, that Equity would be able to generate the documentation which would enable them to determine these offset amounts. The legal issue of the amounts that could be considered an offset is amenable to resolution classwide and the analysis of aggregate costs can only be made in the context of a classwide analysis. Accordingly, the Court finds that Plaintiffs have sustained their burden of satisfying the commonality requirement of Rule 23.

The Woodland Park Preexisting Lease Class also satisfies the commonality requirement for much the same reasons because Equity charges the proposed class a late fee of $50 when rent was not timely paid, regardless of the late fee provision in the class members' preexisting leases. These

factual predicates raise the same legal issues whether assessing Equity's actual damages resulting from late rent was "impracticable or extremely difficult" and whether the $50 late fee was supported by a "reasonable endeavor to estimate actual costs." The uniform policy and the rationale for the policy is common to this class as well.

### c. Typicality and Adequacy to Represent the Class.

Equity also argues that Plaintiffs cannot satisfy the typicality requirement. Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As with the commonality requirement, the typicality requirement is applied permissively. *See Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id*; *see also Lozano v. AT&T Wireless Servs., Inc.,* 504 F.3d 718, 734 (9th Cir. 2007) ("Under Rule 23(a)(3) it is not necessary that all class members suffer the same injury as the class representative."). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (internal quotations omitted). "[T]he adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative." *Rodriguez v. West Publishing Co.*, 563 F.3d 948, 961 (9th Cir. 2009) (internal citations omitted).

The typicality and commonality requirements are similar and tend to merge. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanlon*, 150 F.3d at 1020. The named plaintiff must "understand the gravamen of the claim" but need not "be intimately familiar with every factual and legal issue in the case." *Moeller v Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004) (quotation omitted).

In opposition to the motion, Equity combines much of its response regarding typicality with its contentions regarding the adequacy of representation, by asserting that the various individual named plaintiffs are not adequate representatives because, among other reasons, their claims are not

8

typical of the claims of the class. For the Standard Late Fee Class, Bonfanti is the named representative plaintiff. He was party to the standard lease and was charged late fees under the late fee provision, and challenges that policy on the same legal grounds as the remainder of the class. On this basis, Plaintiffs contend he is typical. Having reviewed the record submitted, the Court finds that Bonfanti has read the complaint and understands its allegations, met and communicates with the attorneys. Further, Bonfanti declares that he is an Equity tenant subject to the late payment fee and the Court finds his alleged injury based on the common alleged conduct to be sufficiently typical and adequate to represent the class.

Equity argues that the named plaintiffs in the Woodland Park Preexisting Lease Class are both atypical and inadequate by virtue of a multiplicity of claims in addition to their late fee claims and their testimony indicating some confusion over terms and allegations in the case. However, having reviewed the entirety of the record submitted, the Court finds that the confusion was minimal and premised on misunderstanding of the legalese and language errors. In addition, the Court finds that the named plaintiffs all share the same challenge of the imposition and accumulation of late fees. In addition, there is no indication that the named plaintiffs have any conflicts of interests with the members of the proposed class, and it appears that Plaintiffs are represented by qualified and competent counsel. Accordingly, the Court finds the named plaintiffs of both proposed classes to be both typical and adequate.

### 3. Rule 23(b) Factors.

In addition to satisfying the four Rule 23(a) factors, Plaintiffs bear the burden of demonstrating that they satisfy the requirements for Rule 23(b)(3). A class action may be maintained under this subsection where "the court finds that question of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors include: "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation in the particular forum; and (D) the likely difficulties

1 in managing a class action." Fed. R. Civ. P. 23(b)(3). Certification is appropriate "whenever the
2 actual interests of the parties can be served best by settling their differences in a single action."
3 *Hanlon*, 150 F.3d at 1033 (citations omitted). Specifically, "when common questions present a
4 significant aspect of the case in a single adjudication, there is clear justification for handling the
5 dispute on a representative rather than on an individual basis." *Id.*

6 As set forth above, the Court finds that the common questions regarding Equity's liability and right to offset the potential restitution of late fee charges predominate over questions of individual class members under Section 1671(d) and the attendant Section 17200 analysis. *See, e.g., Ubaldi v. SLM Corp.*, 2014 WL 12639953, at * (N.D. Cal. Dec. 19, 2014) (certifying a class of student loan borrowers challenging late fee charges, finding commonality where plaintiffs were challenging the manner in which the defendant had set the late fee and the claims turned on standard documents). The Court here finds that the central legal determination under Section 1671(d) – whether it is impracticable to determine actual damages from late payment of rent and whether the landlord made a reasonable endeavor to estimate fair compensation for any loss sustained – are common to all named plaintiffs and the classes they seek to represent. Here, the common questions of law and fact predominate over individual issues and are well suited to class treatment. The same analysis supports the certification of the Section 17200 unlawful claim as it would be premised upon the same underlying violations, if found. *See Hauk v. JP Morgan Chase Bank U.S.*, 552 F.3d 1114, 1122 (9th Cir. 2009); *see also O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 499 (N.D. Cal. 2011).

The Court also finds that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy because the resolution of the liability issues share common issues and once the issue liability is determined, the remedial questions are conducive to class review in that Equity maintains the documentation and records of the late payments and fees assessment as well as actual costs incurred for late payment of rent and actual costs it incurred as a result of the late payments. *See, e.g., Leyva v. Medline Industries*, 716 F.3d 510, 515-16 (9th Cir. 2013) (holding that defendants' computerized time-keeping database could be queried to retrieve data, confirming that certification was manageable, and holding that the district court erred by

"ignoring the database's potential to alleviate the burden of determining damages"). Also, the resolution of these issues by class action is superior because the individual restitutionary amounts at issue are relatively small and the class is large, making class resolution more efficient when individual class members would have little interest in pursuing separate, individual cases. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights") (internal quotes omitted). In addition, there is no indication and the parties do not dispute that there is other pending litigation elsewhere concerning the controversy.[1] Further, concentration of the litigation in this forum is desirable because this Court has exercised management over the matter and overseen the parties' disputes. The Court also finds, based upon the record presented, that the case will be manageable on a classwide basis. Plaintiffs have satisfied the Rule 23(b)(3) requirements with respect to the classes they seek to certify.

**CONCLUSION**

For the foregoing reasons, the Court HEREBY GRANTS the motion to certify the Standard Late Fee Class and appoints David Bonfanti as the class representative, and appoints Goldstein, Borgen, Dardarian & Ho, Community Legal Services for East Palo Alto, and Nicholas & Tomasevic, LLP as Class Counsel for the Standard Late Fee Class.

For the foregoing reasons, the Court HEREBY GRANTS the motion to certify the Woodland Park Preexisting Lease Class, appoints Plaintiffs Javanni Munguia-Brown, Angelina Magana, and Norma Rodriguez as class representatives, and appoints Goldstein, Borgen, Dardarian & Ho, Community Legal Services for East Palo Alto, and Nicholas & Tomasevic, LLP as Class Counsel for the Woodland Park Preexisting Lease Class.

The Court orders that notice be provided to the two classes as follows:

---

[1] Whatever weight should be given to the uncontested order approving a settlement agreement in a lawsuit from 1998 approved the position that Equity's late fee complied with Civil Code Section 1671(d) is also a common question to be determined classwide. (*See* Dkt. No. 75-3, Declaration of Aaron Winn, Ex. 8.)

11

The Court hereby approves the Notice forms submitted by Plaintiffs (long-form notice, email notice, and postcard notice), copies of which are attached to Docket No. 64-7, Proposed Order Granting Plaintiffs' Motion for Class Certification) as Exhibit A (Standard Late Fee Class) and Exhibit B (Woodland Park Preexisting Lease Class).

Within 20 days of this Order, Defendants shall produce to Plaintiffs two lists, in Excel format, setting forth the names, last known addresses and email addresses, phone numbers, and dates and name and address of the Equity Residential property of residence of all of the members of each of the two classes.

Within 20 days of receipt of the two lists, Plaintiffs Counsel shall (1) email, via a third party administrator, a copy of the applicable Court-approved email notice to the Class Members for whom an email address is provided; (2) mail, by U.S. mail, a copy of the applicable Court-approved postcard notice, after running the addresses through the National Change of Address Database; and, (3) post the long-form notice on Class Counsel's websites. For Class Members whose emails are returned as undeliverable, the third party administrator shall promptly send a notice by U.S. mail.

The Class Members shall have 60 days from the initial date when notices are mailed and emailed to opt out of the class, as explained in detail in the applicable notices.

**IT IS SO ORDERED.**

Dated: October 23, 2017

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE