UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVANNI MUNGUIA-BROWN, et al., <br> Plaintiffs, <br> v. <br> EQUITY RESIDENTIAL, et al., <br> Defendants. | Case No. 16-cv-01225-JSW (TSH) <br><br> **DISCOVERY ORDER** <br> Re: Dkt. No. 184 |

Companies sometimes analyze the legality of their policies in order to achieve legal or regulatory compliance, not because they anticipate or are defending litigation. Defendants say they did that here to make sure their late fee was legal. In 2008 they analyzed their proposed late fee, including having in-house counsel and outside counsel give advice, and annually thereafter continued that review to ensure legal compliance. The Court summarized this evidence in its June 9, 2020 order at ECF No. 171. Defendants asserted that these legal communications were protected by the attorney-client privilege, not the attorney work product doctrine. ECF No. 170 at 5. For example, RFP No. 71 asked for "all documents and communications related to Defendants' monitoring or evaluation of the standard late fee following its implementation, including all documents related to the regular monitoring referred to in paragraph 16 of the Beihoffer declaration." Defendants invoked the attorney-client privilege in response, but not the attorney work product doctrine. ECF No. 184-1, Ex. 3. So, this seemed like a consistent story about analyzing the late fee, both when it was initially developed and annually thereafter, to achieve legal compliance.

The story seems to have changed following the Court's June 9 order, which found a subject matter waiver of the attorney-client privilege concerning legal advice from outside counsel

and in-house counsel concerning the legality of the late fee. Because Defendants had not invoked the work product doctrine for those documents, the Court's order had no occasion to consider it (ECF No. 171 at 2 (observing that "only the attorney-client privilege is at issue")), so the finding of waiver was limited to privilege and did not encompass work product. In the wake of that order, Defendants now say that every single document concerning the monitoring of the validity of the late fee after the day this lawsuit was filed was attorney work product. ECF No. 184-1, Ex. 5 ("For monitoring documents post-dating 2014, Defendants' position is that any monitoring of the validity of the late fees is tied up with the lawsuit, and that Judge Hixson's order does not contemplate that such documents will be produced.").

There are two problems with Defendants' new position. First, this categorical assertion of work product based solely on time frame is totally incredible simply on its face. Some people can safely be assumed to be generators of work product once a lawsuit has been filed, such as outside counsel hired to defend the case and in-house counsel who work with them. For other people, work product protection might apply to particular documents depending on whose direction they were acting at the time. However, it is not true that on the day a lawsuit is filed, work product protection falls like snow on everybody at the company. Legal and regulatory compliance practices that were in place for years before a lawsuit was filed do not become work product when a lawsuit is filed if the people involved are simply doing what they did before. Remember that Defendants said they hired landlord-tenant law firms as part of their monitoring efforts and that they had in-house attorneys whose portfolios consisted of different markets and it was their job to be aware of changes in statutory or case law or what was happening in the court systems. ECF No. 171 at 4-5. Those people are not defending this lawsuit. How on earth could the work product doctrine apply to their documents?

Second, Defendants themselves did not think their monitoring documents were protected as work product until after the Court ruled they had waived privilege. Recall that RFP 71 asked for Defendants' documents related to their monitoring or evaluation of their late fee following its implementation, and Defendants did not assert a work product objection. Plaintiffs suggest this failure alone is enough to find a waiver.

However, given the importance of the work product doctrine, it is better to take this in steps. Knowing the dimensions of the problem will help in deciding what to do about it. The Court orders Defendants to produce a privilege log for any document concerning monitoring of the late fee over which Defendants claim work product protection. *See* Fed. R. Civ. Proc. 26(b)(5)(A) (party withholding documents based on work product must provide a privilege log). However, the log should not include any communications with, or documents authored by, outside counsel that were retained by Defendants to litigate this case, as we will simply assume work product protection for those. Further, if Defendants have any in-house counsel whose work concerning the late fee solely involved the defense of this lawsuit (for example, the in-house counsel had no involvement with analyzing or monitoring the legality of the late fee before the lawsuit was filed), Defendants can submit a declaration from that in-house attorney so swearing in lieu of logging his or her documents.

The Court realizes, of course, that despite the plain language of Rule 26(b)(5)(A), litigants do not generally log their litigation-related communications, no matter how relevant, because of the burden of doing so and because communications between certain people (outside counsel and in-house litigation counsel) are so nearly certain to be protected that logging them all would be a pointless waste of time. The problem we are facing in this case is that Defendants are claiming that work product protection has descended on every single person who monitored the validity of the late fee over the last six years such that all such communications are litigation-related. Defendants are implementing this claim with a *per se* date restriction, not by analyzing individual documents to see if they are actually reflective of attorney work product. So, we can't tell Defendants to leave litigation-related documents off their privilege log because, under their expansive theory of what is related to litigation, they would leave off everything. Accordingly, the Court has carved out categories of documents from the logging requirement (outside counsel documents, and documents from a specific type of in-house counsel) where those categories are likely to be burdensome and the work product claim is likely to be valid. The remaining documents require scrutiny, and the logging requirement is narrowly tailored to identify them.

Defendants must serve the privilege log (and any in-house declarations) on Plaintiffs

3

within 30 days.  Any deficiencies in the log or the declarations should be raised in a joint discovery letter brief.  If Plaintiffs wish to move to compel any documents over the work product objection, either because the documents are not work product or because the objection has been waived, they should do so in a full written motion under Local Rule 7 and not a joint discovery letter brief.

**IT IS SO ORDERED.**

Dated: October 19, 2020

_____
THOMAS S. HIXSON
United States Magistrate Judge