UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVANNI MUNGUIA-BROWN, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>EQUITY RESIDENTIAL, et al.,<br><br>        Defendants. | Case No.  16-cv-01225-JSW   (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 245 |

Plaintiffs sue Defendants Equity Residential, et al., for two causes of action under California law.  They allege that Defendants have a policy of charging tenants the greater of $50 or 5% of their outstanding balance for late rent payments.  Plaintiffs claim this is an unlawful penalty under California Civil Code § 1671(d) and a violation of California Business and Professions Code § 17200.

This is the third in a trilogy of orders concerning Defendants' selective disclosure of legal advice from outside and in-house counsel regarding the legality of their late fee.  Plaintiffs move to compel the production of 69 documents that Defendants have withheld on the ground that they are work product.  Plaintiffs argue that the documents are responsive to their requests for production ("RFPs") 71 and 74, that they are not work product, or if they are, that Defendants have waived work product protection by failing to timely assert a work product objection and by their selective disclosure of attorney legal advice.  For six of the documents, the Court agrees and orders Defendants to produce them.  For the remaining 63, the Court declines to order production. To understand today's order, it is necessary to recount the two prior orders.

**A.**     **June 9, 2020 Order (ECF No. 171)**

The Court's June 9, 2020 order addressed the waiver of attorney-client privilege pursuant

to Federal Rule of Evidence 502(a), which provides:

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

In successfully opposing Plaintiffs' motion for summary judgment, Defendants made two disclosures of legal advice.  First, in-house counsel Denise Beihoffer disclosed that when Defendants adopted their proposed late fee in 2008, outside counsel advised that it was lawful.  Second, in-house counsel James Fiffer disclosed that on an annual basis since 2008, in-house counsel and outside counsel analyzed the late fee and advised that it was legal.  ECF No. 171 at 3-5.  The Court concluded that these disclosures were intentional.  They were also significant because Judge White specifically cited these disclosures in his order denying Plaintiffs' summary judgment motion.  *Id*. at 5-6.  Thus, the first element of the Rule 502(a) test was satisfied.

The second element of the Rule 502(a) test was also satisfied because Fiffer and Beihoffer had been specifically instructed not to say what legal advice they had provided concerning the legality of the late fee, and Defendants claimed attorney-client privilege over written communications concerning legal advice about the lawfulness of the late fee.  Accordingly, the disclosed and undisclosed communications concerned the same subject.  *Id*. at 6.

The third requirement for waiver – that the undisclosed communications "ought in fairness to be considered together" with the disclosed ones, Fed. R. Evid. 502(a)(3) – was also satisfied.  As the Court noted, the story that Defendants received copious legal advice year after year from outside and in-house attorneys, who all advised that the late fee was legal, was powerful evidence that Defendants made a reasonable endeavor to come up with an appropriate fee.  It made them look diligent and thorough.  Indeed, this legal advice, combined with other evidence, was enough to stop the Plaintiffs' summary judgment motion.  *Id*.

But fairness required that this story be subjected to meaningful cross-examination.  After all, what if Defendants were lying about what their lawyers told them?  What if different lawyers told them different things?  Defendants have testified to the high-level conclusion that many lawyers analyzed the late fee and they all advised it was legal.  If the truth was anything more nuanced than that, their story could quickly fall apart.  The only way to test Defendants' story was to consider the undisclosed communications together with the disclosed ones.  Otherwise, cross-examination was impossible.  *Id*. at 6-7.  Accordingly, the Court found a waiver of the attorney-client privilege under Rule 502 as to legal advice from outside counsel and in-house counsel concerning the legality of the late fee.  *Id*. at 7.

The Court's order addressed only the attorney-client privilege and not the work product doctrine because Defendants' privilege log at the time asserted only attorney-client privilege and did not claim work product protection for any documents.  Likewise, Defendants' instructions to Beihoffer and Fiffer were not based on work product.  *Id*. at 2.

Judge White denied Defendants' motion for relief from the Court's June 9 order, ECF No. 178, and the Ninth Circuit denied their mandamus petition.  ECF No. 192.

## B.     October 19, 2020 Order (ECF No. 196)

The Court's October 19, 2020 order addressed what appeared to be a new claim of work product protection that seemed to arise in the wake of the Court's June 9 order.  The Court began the order by observing that companies sometimes analyze the legality of their policies in order to achieve legal or regulatory compliance, not because they anticipate or are defending litigation.  Defendants had said they did that here to make sure their late fee was legal.  They said that in 2008 they analyzed their proposed late fee, including having in-house counsel and outside counsel give advice, and annually thereafter continued that review to ensure legal compliance.  Defendants had asserted that these legal communications were protected by the attorney-client privilege, not the attorney work product doctrine.  RFP No. 71 had asked for "all documents and communications related to Defendants' monitoring or evaluation of the standard late fee following its implementation, including all documents related to the regular monitoring referred to in paragraph 16 of the Beihoffer declaration."  Defendants invoked the attorney-client privilege in

response, but not the attorney work product doctrine.  This seemed to the Court like a consistent story about analyzing the late fee, both when it was initially developed and annually thereafter, to achieve legal compliance.  ECF No. 196 at 1.

But the story seemed to have changed following the Court's June 9 order, which had found a subject matter waiver of the attorney-client privilege concerning legal advice from outside counsel and in-house counsel concerning the legality of the late fee.  In the wake of that order, Defendants were now contending that every single document concerning the monitoring of the validity of the late fee after the day this lawsuit was filed was attorney work product.  *Id*. at 2.

The Court expressed skepticism with that assertion of work product.  First, a categorical assertion of work product protection based solely on time frame seemed problematic.  Second, Defendants themselves did not think their monitoring documents concerning the late fee were protected as work product until after the Court ruled they had waived privilege.  RFP 71 had asked for Defendants' documents related to their monitoring or evaluation of their late fee following its implementation, and Defendants did not assert a work product objection.  Plaintiffs argued that this failure alone was enough to find a waiver.  *Id*.

Given the importance of the work product doctrine, the Court decided to take things in steps.  It ordered Defendants to produce a log of any documents concerning monitoring of the late fee over which they were now claiming work product protection.  The Court put limits on what had to be logged.  *Id*. at 3.  The Court then stated that if Plaintiffs wished to move to compel any documents over the work product objection, either because the documents are not work product or because the objection has been waived, they should do so in a full written motion under Local Rule 7.  *Id*. at 4.

## C.    This Order

Plaintiffs have now filed that motion to compel.  ECF No. 245.  They argue that none of the documents at issue are work product, and if they are, the objection was waived by the failure to timely assert it and because of selective disclosures.  The Court has reviewed the documents *in camera*.  For the benefit of the reader, the documents are discussed in this order according to the number in the left hand column of the privilege log in Exhibit 11 to the Bellows Declaration at

ECF No. 244-6.

### 1.      Documents 15-20

The Court will not bury the lede, which is documents 15-20.  When Plaintiffs served RFP 71 a year ago, this is what they were asking for.  These are among the most responsive documents. These documents are also the absolute core of what the Court ordered Defendants to produce in the June 9 order.  These documents embody the Court's fear that Defendants' selective disclosures of attorney advice allowed them to misrepresent what their attorneys told them and omit conflicting opinions Defendants received that cast doubt on the legality of the late fee.  Each of these documents is an email with an attached memorandum written by in-house counsel reflecting their and outside counsel's legal advice concerning the legality of the late fee in the annual review process that Fiffer described.  In a paragraph under the heading "California," the fourth sentence undermines Beihoffer's statement that in 2008 outside counsel advised that the proposed late was lawful, as well as Fiffer's statement that in every year since then in-house and outside counsel concluded it was still lawful.  To be clear, the fourth sentence does not deny that such advice was given.  Rather, it presents a factual basis for Plaintiffs to argue that Defendants knew or should have known that the advice could not reasonably have been relied on.  In addition, the fifth sentence in that paragraph directly contradicts Fiffer's statement that in every year since 2008, in-house and outside counsel advised that the late fee was lawful.

These documents are the dead center of what Plaintiffs have been trying to get for a year and what the Court ordered Defendants to produce last June.  The Court must therefore determine whether they are work product, and if so, whether work product protection has been waived.

### a.      Work Product Status

Documents 15-20 are not work product.  They were not prepared in anticipation of litigation or for trial.  *See* Fed. R. Civ. Proc. 26(b)(3)(A).  They were not prepared as part of the defense of any lawsuit.  They look very similar to pre-lawsuit annual review documents that Defendants said were not work product, such as Exhibits 13 and 14 to the Bellows Declaration at ECF No. 244-6.  The difference is that documents 15-20 state that they were prepared by the litigation team, but the work product inquiry focuses on the purpose for which the documents were

created, not just who prepared them.  These documents state that the litigation team conducted the annual fee review to focus on the defensibility of the fees and to avoid further litigation.  That looks like compliance work; these documents are not part of litigation defense.  The memos also state that in doing this annual review, the litigation team surveyed the outside attorneys who handled the company's landlord tenant work and represented other institutional landlords for their advice, in addition to doing their own independent analysis.  This is exactly how Defendants did their annual review process before this lawsuit was filed and how they generated pre-lawsuit documents that Defendants agree are not work product.  Further, the involvement of outside attorneys *who have no role in defending this lawsuit* makes the work product claim specious.

In its October order, the Court expressed consternation at Defendants' assertion that all monitoring of the late fee became work product on the day this lawsuit was filed:  "Remember that Defendants said they hired landlord-tenant law firms as part of their monitoring efforts and that they had in-house attorneys whose portfolios consisted of different markets and it was their job to be aware of changes in statutory or case law or what was happening in the court systems.  ECF No. 171 at 4-5.  Those people are not defending this lawsuit.  How on earth could the work product doctrine apply to their documents?"  ECF No. 196 at 2.  The Court's concerns were justified.  Although it is true that Defendants handed the annual review to the litigation team after this lawsuit was filed, the actual work involved in the annual review did not change.  Documents 15-20 are not work product.

### b.    Waiver

In the interest of being thorough, the Court also finds that even if documents 15-20 were work product, Defendants have waived work product protection.

### i.    Unreasonable Delay

Recall that Defendants responded to RFP 71 on March 30, 2020 and did not assert a work product objection.  So far as the record discloses, the first time Defendants asserted in any fashion a work product objection to RFP 71 was in oral meet and confer calls in August 2020 that were summarized in emails by Plaintiffs' counsel.  Bellows Decl. ¶ 11 & Ex. 7, ECF No. 245-1.  A privilege log listing these documents was first served on November 18, 2020.  Bellows Decl. ¶ 13

United States District Court
Northern District of California

& Ex. 8, ECF No. 244-6.  Until that day, there was no reason for Plaintiffs to know these documents existed.

The Ninth Circuit has held that a boilerplate objection or a blanket refusal to produce in an RFP response is not sufficient to assert a privilege.  *See Burlington N. & Santa Fe Ry.*, 408 F.3d 1142, 1149 (9th Cir. 2005).  So, even if Defendants had claimed work product in the March 30 response to RFP 71, which they did not, that would not be enough to assert work product.  At the same time, the Ninth Circuit has held that there is not a *per se* waiver of a privilege from not producing a privilege log within Rule 34's 30-day time limit.  Instead:

> [U]sing the 30–day period as a default guideline, a district court should make a case-by-case determination, taking into account the following factors: the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard. These factors should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process. They should not be applied as a mechanistic determination of whether the information is provided in a particular format. Finally, the application of these factors shall be subject to any applicable local rules, agreements or stipulations among the litigants, and discovery or protective orders.  *Id.*

All of these factors support a finding of waiver of work product protection.  Defendants' failure to make any work product objection to RFP 71 and failure to claim work product for any document on their privilege log that was before the Court in connection with the June order completely stymied the Plaintiffs and the Court from evaluating the work product claim because neither the Plaintiffs nor the Court knew that the claim existed.  It was not until August 2020 – five months after responding to RFP 71 – that Defendants put Plaintiffs on notice that they were withholding responsive documents based on a work product objection.  And it was not until mid-November 2020 – about eight months after responding to RFP 71 – that Defendants provided a log

7

United States District Court
Northern District of California

that enabled Plaintiffs and the Court to perform any evaluation at all of the work product claim. This delay was extreme. And considering that Defendants' amended January 2021 log had only 69 documents on it, this delay was unjustified; the number of documents at issue was simply too small.

And the particular circumstances of the litigation also counsel in favor of a waiver. Despite their unbelievable protestations to the contrary, Defendants must have known that documents 15-20 were what Plaintiffs were trying to get. And once they read the Court's June order, they surely knew these were exactly the documents the Court was concerned that they were trying to withhold. Defendants waited until after they lost a fight over subject matter waiver of the attorney-client privilege to shift ground and come up with a new work product objection. The Ninth Circuit's decision in *Burlington* seems to envision a responding party that announces its privilege objection early but then makes it hard for that claim to be evaluated by delaying service of its privilege log for a long time. But here, it is not true that before the June order, Defendants had imperfectly asserted a work product objection and then merely lacked diligence in serving a work product log. Rather, the work product objection did not come into existence in any form until after the Court's finding that attorney-client privilege had been waived. That was tactical manipulation.

Accordingly, the Court finds that Defendants have waived any work product protection over documents 15-20.

### ii.      Rule 502

The Court also finds a waiver under Federal Rule of Evidence 502. The Court's June 2020 order at ECF No. 171 found a waiver of attorney-client privilege due to two selective disclosures. The first was Beihoffer's disclosure that outside counsel told Defendants their late fee was legal in 2008. The second was Fiffer's disclosure that Defendants' outside counsel and in-house counsel analyzed the legality of the late fee every year since 2008 and determined it was legal. The Court found that these disclosures gave rise to a subject matter waiver concerning legal advice from outside counsel or in-house counsel about the legality of the late fee.

The Court's previous finding that these disclosures were intentional remains unchanged, so

United States District Court
Northern District of California

1   Rule 502(a)(1) is still satisfied.  Rule 502(a)(2) requires that "the disclosed and undisclosed

2   communications or information concern the same subject matter."  They do.  Beihoffer's and

3   Fiffer's disclosures concerned what in-house and outside counsel advised Defendants concerning

4   the legality of the late fee.  Documents 15-20 are each an email with an attached memorandum

5   written by in-house counsel reflecting their and outside counsel's legal advice concerning the

6   legality of the late fee.  That's the same subject.

7        Further, for purposes of the waiver determination for work product, the Court construes the

8   "same subject matter" narrowly to include only the initial review of the proposed late fee in 2008

9   and the annual review of the late fee every year thereafter.  The Court understands that in the

10   course of defending litigation, counsel must be able to candidly advise their clients.  The Court

11   does not think that Beihoffer's and Fiffer's disclosures justify further disclosures of legal advice

12   made squarely in the defense of this lawsuit.  Accordingly, the Court's October order excluded

13   from the logging requirement communications with outside counsel, as well as communications

14   with in-house counsel whose work concerning the late fee solely involved the defense of this

15   lawsuit.  ECF No. 196 at 3.  In addition, in the current work product log there are two documents

16   (1 and 68) that contain attorney assessments of the legality of the late fee that are inextricably

17   interwoven with the defense of the lawsuit, and that did not occur in the initial or annual review of

18   the late fee, and the Court declines to find that those are the same subject.  Documents 15-20, by

19   contrast, are annual review documents.  They are part of the annual review process that Fiffer

20   testified about, and the content of those documents also implicates Beihoffer's testimony about the

21   2008 initial review by providing information about the quality of that review.  They are therefore

22   part of the same, very narrowly drawn subject matter.

23        Rule 502(a)(3) requires that the disclosed and undisclosed communications "ought in

24   fairness to be considered together."  That requirement is satisfied too.  It would be grossly unfair

25   for Defendants to be able to continue to use their selective disclosures of favorable legal advice

26   from in-house and outside counsel in the initial review in 2008 and in annual reviews thereafter

27   concerning the legality of their late fee while hiding these documents, which paint a different

28   picture, under the work product doctrine.  The Court therefore finds a waiver of work product

9

1   protection under Rule 502(a).

2   ### iii.   Whether the Waiver Extends to Opinions

3   Outside of the context of Rule 502(a), courts differentiate between a waiver of factual

4   work product and a waiver of opinion work product.  In *United States v. Sanmina Corp*., 968 F.3d

5   1107 (9th Cir. 2020), the Court held that "[t]o the extent [defendant] waived the work-product

6   privilege, the scope of its waiver must be closely tailored . . . to the needs of the opposing party

7   and limited to what is necessary to rectify any unfair advantage gained by [defendant] from its

8   conduct."  *Id*. at 1124 (citation and quotation marks omitted).  The Court noted that "[w]e have

9   held that . . . opinion work product is discoverable only when mental impressions are at issue in a

10  case and the need for the material is compelling."  *Id*. at 1125 (citations and quotation marks

11  omitted).

12  Plaintiffs argue that Rule 502 does not draw this distinction between types of work

13  product.  Superficially, they seem to have a point.  Rule 502(g), entitled "Definitions," states that

14  "[i]n this rule . . . (2) 'work-product protection' means the protection that applicable law provides

15  for tangible material (or its intangible equivalent) prepared in anticipation of litigation or for trial."

16  That definition of work product includes both factual and opinion work product, as illustrated by

17  Federal Rule of Civil Procedure 26(b)(3)(B), which characterizes mental impressions, conclusions,

18  opinions and legal theories of a party's attorney as a subset of "those materials" described above in

19  (b)(3)(A), which mirrors Rule 502(g)'s definition of work product.  Rule 502(a) then states that

20  when a disclosure "waives the attorney-client privilege or work-product protection, the waiver

21  extends to an undisclosed communication or information" if the three requirements discussed in

22  the previous section of this order are satisfied.  The relevant inquiry, therefore, is whether the

23  undisclosed communications concern the same subject matter as the disclosed communications

24  and whether they ought in fairness be considered together.  The Rule does not on its face draw a

25  distinction between factual and opinion work product.

26  However, the Court thinks that the distinction between factual and opinion work product is

27  embedded in the third requirement of Rule 502(a)(3), which is that the disclosed and undisclosed

28  communications ought in fairness be considered together.  A waiver of only factual work product

might not justify extending the waiver to opinion work product.  And in any event, one of the Court's bases for finding a work product waiver is the extreme delay in the assertion of the privilege, which is not a waiver under Rule 502.

Here, Defendants' selective disclosures were of counsel's legal opinions and conclusions that the late fee is legally valid.  The essence of the Court's June order was the finding that Defendants had done more than just disclose factual information about attorneys being involved in the review of the late fee, but had also disclosed the legal opinions of those attorneys.  The only way to "rectify any unfair advantage" gained by Defendants from these disclosures, *Sanmina*, 968 F.3d at 1124, is to extend the waiver to opinion work product, which mirrors in scope what the selective disclosures were.  Limiting the disclosure to factual work product would in no way address the harm to Plaintiffs from Defendants' selective disclosures.

### c.    Conclusion

For the foregoing reasons, the Court orders Defendants to produce documents 15-20. Defendants may redact the specific paragraphs in those documents that relate to states other than California.  They may not redact any of the discussion relating to California, and they may not redact the introductory paragraph(s) of the memos, which explain what the memos are.

Because fact discovery closes in approximately six weeks, and because producing six documents is not burdensome, the Court orders Defendants to produce these documents by February 22, 2021 so that Plaintiffs may use them in depositions.  The Court also orders Defendants to file a proof of service by February 23, 2021 stating that they have served these documents on Plaintiffs.

The Court understands that Defendants may move for relief from this order before Judge White and may petition the Ninth Circuit for mandamus, like they did in connection with the June order.  While Judge White and the Ninth Circuit will of course decide for themselves if they wish to stay this order pending their review, this Court refuses to stay this order, which takes effect immediately.  The Court's June order required *these documents* to be produced.  Judge White and the Ninth Circuit denied Defendants relief from that order, but instead of complying and producing the documents, Defendants shifted ground and tried to avoid production by relying on a

new and meritless work product objection.  It makes no sense to stay this order pending a second appellate review when Defendants were supposed to have produced these documents after the first appellate review was completed.  *See* ECF No. 190 (ordering Defendants to produce documents following Ninth Circuit's denial of writ petition).  Further, a stay pending a second appellate review could cause Plaintiffs irreparable harm, as it could prevent them from being able to use the documents in depositions before the April 4, 2021 fact discovery cutoff.  By contrast, there is no irreparable harm to Defendants from having to produce these documents now.  If Judge White or the Ninth Circuit determines that production was improper, Judge White can exclude them from evidence in the October trial.

### 2.    Documents 1-14

The rest of this order will be anticlimactic.  Documents 1-14 are work product.  Defendants could have believed in good faith they were not responsive to RFP 71, so the failure to object to that RFP on ground of work product does not pose a problem for these documents.  Document 1 is responsive to RFP 74, which asked for all documents not already produced by Defendants that communicate, consist of, or pertain to legal advice Defendants requested or received from outside counsel or in-house counsel concerning the legality of the standard late fee.  Documents 2-14, while all similar to each other, vary in the degree to which they are responsive to RFP 74.  Defendants did specifically object to RFP 74 based on work product.  So, for these documents we don't have the problem of shifting legal positions to evade a court order, or the Plaintiffs having no idea that anything is being withheld based on an objection they never heard about.  Right from the get-go, Defendants announced they were objecting based on work product.  The delay in producing a work product log was extensive, but since reasonable arguments could be made that most of these documents didn't need to be logged anyway (because they are not responsive), and there is no other misconduct, the Court declines to find a waiver.  Also, there is no waiver under Rule 502 because these documents do not reflect the annual review by outside counsel in 2008 or the years thereafter.  The Court denies Plaintiffs' motion to compel as to documents 1-14.

### 3.    Documents 21-69

Document 21 is not work product, but it is also irrelevant.  Documents 22-69 are work

product.  Everything discussed in those documents is wrapped up in the defense of this case.
Defendants could reasonably have thought the documents were not responsive to RFP 71, so there
was no need to object to that RFP based on work product to shield these documents.  Further,
documents 22-61, 63-67 and 69 are not responsive to RFP 74 either.  Document 68 is responsive
to RFP 74, and document 62 might be.  Therefore, while Defendants did delay in producing a
work product log in response to RFP 74, almost none of these documents actually needed to be
logged.  And the selective disclosure issue isn't relevant to these documents, which discuss other
subjects.  Accordingly, the Court denies Plaintiffs' motion to compel as to documents 21-69.

**IT IS SO ORDERED.**

Dated: February 18, 2021

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

13