# EXHIBIT A

[PROPOSED] EQUITY RESIDENTIAL'S SURREPLY BRIEF IN RESPONSE TO PLAINTIFFS' REPLY RE POST-TRIAL BRIEF

Aaron T. Winn (SBN 229763)
Justin J. Fields (SBN 259491)
Karen L. Alexander (SBN 265926)
**DUANE MORRIS LLP**
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone:  619.744.2200
atwinn@duanemorris.com
jfields@duanemorris.com
klalexander@duanemorris.com

John Sheldon Letchinger (*Pro Hac Vice*)
**Baker & Hostetler LLP**
One N. Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: 312.416.6200
jletchinger@bakerlaw.com

Attorneys for Equity Residential

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| JAVANNI MUNGUIA-BROWN, et al.<br><br>Plaintiffs,<br><br>v.<br><br>EQUITY RESIDENTIAL, et al.,<br><br>Defendants. | Case No.  16-cv-01225-JSW<br><br>**EQUITY RESIDENTIAL'S SURREPLY BRIEF IN RESPONSE TO PLAINTIFFS' REPLY RE: POST-TRIAL BRIEF**<br><br>Hon. Jeffrey S. White<br>Courtroom 5, 2nd Floor |

1

Plaintiffs' 34-page Reply brief cites new authorities, makes new arguments, and misconstrues the operative facts. This surreply responds only to these new arguments and assertions.

## I. Plaintiffs misstate the facts.

The essence of Plaintiffs' Reply is that this Court should enter an injunction based on Plaintiffs' speculation that Equity might start charging the Standard Late Fee again. There is literally no evidence to support this position. And Equity has shown that it not only stopped charging the Standard Late Fee, it removed it from its lease agreements, to ensure that no current or future residents will be assessed the Standard Late Fee. (*See* ECF No. 562-1, Declaration of Jenay Carnley, at ¶¶ 5, 7, 11, 13.)

In fact, even Plaintiffs do not dispute that Equity has (1) stopped charging the Standard Late Fee, (2) told residents it had stopped charging the Standard Late Fee, (3) removed the Standard Late Fee from new and renewal leases, (4) ceased making adverse credit reports based on residents' balances that include, among other items, an unpaid Standard Late Fee, (5) stopped collections efforts on accounts with unpaid Standard Late Fees, and (6) began the laborious task of adjusting resident ledgers to remove any unpaid Standard Late Fee charges, less the offset amount proposed by Plaintiffs. (ECF No. 562-1, ¶¶ 5, 7, 11, 13, 14, 16, and 17.)

These facts distinguish this case from other cases in which courts found that a plaintiff had satisfied the burden of showing a likelihood that the defendant would engage in future unlawful conduct warranting an injunction. For example, in *Nelson v. Pearson Ford Co.*—cited in *Robinson v. U-Haul Co. of California*, 4 Cal.App.5th 304, 315 (Cal. Ct. App. 2016), a case heavily relied upon by Plaintiffs—the trial court entered an injunction when the evidence showed that two years after defendant claimed to have stopped backdating contracts, defendants actually backdated 228 contracts. *Nelson v. Pearson Ford Co.*, 186 Cal.App.4th 983, 1021 (Cal. Ct. App. 2010), disapproved of by *Raceway Ford Cases*, 2 Cal.5th 161 (Cal. 2016).

2

Unlike *Nelson,* Equity has not charged the Standard Late Fee even *one* time since it terminated the Standard Late Fee. (See ECF No. 562-1, ¶ 5.) And for the reasons outlined above and summarized below, there is no likelihood that Equity will resume charging the Standard Late Fee.

### A. Equity did not temporarily suspend the Standard Late Fee, it ended it.

Plaintiffs speculate that Equity has only "temporarily suspended" the Standard Late Fee. (ECF No. 565, p. 10.)

Wrong. Equity temporarily suspended late fees and *permanently* stopped charging the Standard Late Fee; Equity also notified its tenants in writing that it "ended" the Standard Late Fee. (ECF No. 562-1, ¶¶ 5, 7, Ex. A; *see also* ECF No. 548, p. 1.) There is nothing temporary about this. *Id.*

California law, of course, permits Equity to charge a reasonable late fee in the future; but Equity will not charge the Standard Late Fee.

### B. Equity is legally bound by its updated leases, and Equity's lease agreements do not include the Standard Late Fee.

Plaintiffs argue that Equity has taken no "legally binding" action that precludes it from reimposing the Standard Late Fee in the future. (ECF No. 565, p. 10.)

Wrong. Equity has removed the Standard Late Fee from its lease templates, which means that no renewing or new tenants will see the Standard Late Fee and Equity cannot legally charge the Standard Late Fee. (ECF No. 562-1, ¶¶ 11, 13.)

Plaintiffs also complain that Equity did not "take[] any action to rescind or amend the late fee for the thousands of tenants whose leases still include the Standard Late Fee." (ECF No. 565, pp. 14-15.)

Wrong again. Equity rescinded the Standard Late Fee when it stopped charging the Standard Late Fee (ECF No. 562-1, ¶ 5) and informed its residents that Equity would not charge the Standard Late Fee in the future (*id.*, ¶ 7, Ex. A). And Equity has not charged the Standard Late Fee—even once—since May 2024. (*Id.*, ¶ 5.)

3

### C. Equity's tenant notifications are complete and accurate.

Plaintiffs also argue that Equity's email notification to tenants contained "baseless threats that tenants will be forced to pay legal costs merely for paying their rent late." (ECF No. 565, p. 14, discussing ECF No. 562-1, Ex. A.) Wrong again. Equity's email notification informs Plaintiffs that tenants "remain responsible for actual costs associated with your failure to pay rent timely, including our legal costs," where consistent with local requirements and their lease. (ECF No. 562-1, Ex. A.) This is a true and correct statement of California law. See Cal. Civ. Code § 3300 (stating the measure of damages for breach of contract is the amount which will compensate the performing party for all detriment proximately caused by, or likely to result from, the breach).

In fact, as this Court recognized in its Findings of Fact and Conclusions of Law (in the context of offset), Equity is entitled to recover "the amount of any actual costs the landlord can prove were suffered as a result of the tenant's late payment of rent." (ECF No. 546, ¶ 29 [citing this Court's prior orders, *Garrett v. Coast & Southern Fed. Sav. & Loan*, Ass'n, 9 Cal. 3d 731, 740-41 (1973), and *Beasley v. Wells Fargo Bank,* 235 Cal. App. 3d 1383, 1402 (1991)].) Thus, reminding tenants of this fact is not improper, incomplete, or inaccurate.

### D. Equity has always complied with Court orders and will continue to do so.

Plaintiffs attempt to weaponize the *Consumer Justice Foundation* action settlement in 2000—in which the Superior Court approved a settlement that permitted Equity to charge a $50 late fee (ECF No. 565, p. 15)—but that case supports Equity's position. In fact, Equity fully complied with the court order in the *Consumer Justice* action, and Equity immediately ceased charging the Standard Late Fee following this Court's issuance of its Findings of Fact and Conclusions of Law. (ECF No. 562-1, ¶ 5.) Speculation that Equity will flaunt the Court's order—especially when there is no evidence that Equity has ever done so—is not grounds for justifying an injunction,

4

1  especially an injunction that dictates the specific amount of Equity's future late fee.

2  **E.  The Court should not dictate Equity's future late fee.**

3  Finally, Plaintiffs once again overreach by asking this Court to not just enjoin the Standard Late Fee—the only liability issue this Court adjudicated—but to determine what late fees Equity may charge in the future. (ECF No. 565, p. 15.) But Plaintiffs have never cited any authority supporting their extraordinary position that this Court should substitute its own judgment for the reasonable endeavor test. Nor do Plaintiffs adequately address the case law cited in Equity's Opposition showing that a Court may not substitute its judgment for that of the Legislature. (See generally, ECF No. 562, pp. 28-36.)

To the contrary, injunctive relief must be tailored to remedy the specific harm alleged, and an overbroad injunction is an abuse of discretion. *Lamb–Weston, Inc. v. McCain Foods, Ltd.,* 941 F.2d 970, 974 (9th Cir.1991). An injunction should not be granted for the purpose of enjoining all possible breaches of the law. *See Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir.2004); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1046, 1062 (N.D. Cal. 2010) (adopting magistrate's proposed order which did not incorporate a portion of proposed injunction that was not specifically directed at defendants' conduct.)

Therefore—under the well-established federal and state law standards cited here and in Equity's Opposition—there is no basis for this Court to enter an injunction. But if the Court is inclined to enter any injunction at all, it should be narrowly limited to enjoining Equity from charging the Standard Late Fee.

**II.  Plaintiffs Misstate the Law**

Plaintiffs' Reply cites two new cases on the entirely separate legal doctrine of mootness. (*See* ECF No. 565, p. 12.) But Equity is not arguing that Plaintiffs' claims are moot, and Plaintiffs' cases are inapposite.

For example, in *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.* 528 U.S. 167 (2000), a Clean Water Act case involving non-compliance with

5

a pollution discharge permit, the Supreme Court found that the defendant's substantial compliance with its permit did not moot the plaintiff's claim for civil penalties because "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id.* at 189. Equity has never argued that this Court lacks the authority to determine the legality of its Standard Late Fee. In fact, the Court has already adjudicated that issue. But Plaintiffs are now asking the Court to go one step further: to dictate what late fee Equity can charge (even though there is no evidence before the Court regarding Equity's *current* costs from late rent). Nothing in *Friends of the Earth* supports that extraordinary request.

Likewise, in *Rosemere Neighborhood Ass'n v. U.S. Environmental Protection Agency*, 581 F.3d 1169 (9th Cir. 2009), a non-profit organization sued the U.S. Environmental Protection Agency (EPA) under the Administrative Procedure Act for failing to timely process and investigate the organization's complaints. Before trial, the EPA investigated and closed the organization's then-pending complaint. *Id.* at 1172. The trial court dismissed the action as moot, but the Ninth Circuit reversed in light of a "consistent pattern of delay by the EPA" and a lack of evidence showing that the organization would not file future complaints that could be subject to unreasonable delay. *Id.* at 1172-75. *Rosemere* is thus factually and legally distinguishable. But even if it were not, its holding supports Equity's position: *Rosemere* holds that the cessation of illegal activity in response to pending litigation moots a case where "the party alleging mootness can show that the 'allegedly wrongful behavior could not reasonably be expected to recur.'" 581 F.3d at 1173. That is exactly what Equity has done here.

### III.  Plaintiffs' evidentiary objections are misplaced.

Plaintiffs object to the Declaration of Jenay Carnley in multiple lengthy footnotes in their Reply. (ECF No. 565, pp. 13-14.) But their objections are not well taken. Carnley—who is one of Equity's senior directors and who testified at trial in this matter—lays the foundation for her Declaration by explaining, *inter alia*, that she

6

"ha[s] been involved in and [is] familiar with the changes Equity has made to account for the Court's findings and conclusions regarding the Standard Late Fee." (ECF No. 562-1, ¶ 4.) Moreover, the Court is entitled to consider and rely on sworn declarations when determining whether to issue an injunction. *See, e.g., Ctr. for Food Safety v. Vilsack,* 734 F. Supp. 2d 948, 949, n. 1 (N.D. Cal. 2010) (considering evidence presented in declarations in connection with denying plaintiffs' motion for a permanent injunction); *Hynix Semiconductor Inc. v. Rambus Inc.,* 609 F. Supp. 2d 951, 965, 979, 986 (N.D. Cal. 2009) (same).

But if the Court is inclined to give any weight to Plaintiffs' objections, Equity requests the opportunity to call witnesses and present evidence at a hearing to determine the appropriateness of Plaintiffs' request for a permanent injunction. In fact, as the Ninth Circuit explains: "Generally the entry or continuation of an injunction requires a hearing. Only when the facts are not in dispute, or when the adverse party has waived its right to a hearing, can that significant procedural step be eliminated." *Charlton v. Estate of Charlton*, 841 F.2d 988, 989 (9th Cir. 1988) (reversing and remanding district court's entry of a permanent injunction since "the injunction should not have been issued without a hearing on the merits").

And a trial on liability does not obviate the need for a separate evidentiary hearing as to the appropriate remedy because "[a] hearing on the merits—*i.e.*, a trial on liability—does not substitute for a relief-specific evidentiary hearing unless the matter of relief was part of the trial on liability, or unless there are no disputed factual issues regarding the matter of relief." *United States v. Microsoft Corp.*, 253 F.3d 34, 98, 101 (D.C. Cir. 2001) (vacating the trial court's remedies decree where "the court failed to hold a remedies-specific evidentiary hearing when there were disputed facts").

Here, Plaintiffs seek injunctive relief that goes beyond the issues presented at trial. They have also made several allegations regarding alleged post-trial conduct to support their demand for broad injunctive relief. But as *Charlton* emphasizes, these disputed allegations cannot serve as the basis for an injunction—at least not an

7

1  injunction that does anything more than enjoin Equity from charging the Standard
2  Late Fee. If the Court is considering issuing an injunction that dictates the amount of
3  Equity's future late fees or that prescribes what Equity can say to its residents, the
4  Court must first hold an evidentiary hearing regarding those issues. *See Charlton*, 841
5  F.2d at 989 (9th Cir. 1988) (reversing entry of a permanent injunction because "the
6  injunction should not have been issued without a hearing on the merits"); *United*
7  *States v. Microsoft Corp.*, 253 F.3d at 101 (D.C. Cir. 2001) (same).

Dated:  September 4, 2024                                  **DUANE MORRIS LLP**

By:*/s/Aaron T. Winn*
   Aaron T. Winn
   Justin J. Fields
   Karen L. Alexander
   John Sheldon Letchinger
   Attorneys for Defendants
   EQUITY RESIDENTIAL